STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. PAUL DOLINER, M.D., ANTHONY TODARO, PH.D., MARLENE TODARO AND CENTRAL JERSEY MENTAL HEALTH CENTER, INC., A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS.

Argued January 10, 1984—Decided May 31, 1984.

238

*Richard J. Schachter* argued the cause for appellants Anthony Todaro, Ph.D., et al. (*Schachter, Wohl, Cohn & Trombadore,* attorneys).

*Douglas W. Hansen* argued the cause for appellant Paul Doliner, M.D.

*Michael Bozza,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Wayne J. Martorelli,* of counsel and on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This case concerns the standard that shall govern the disclosure of grand jury materials to government departments for use in civil prosecution. We hold that the standard is a strong showing of particularized need that outweighs the public interest in secrecy of the grand jury proceedings. We find that the record made before the trial court sustains its decision to release the records of the defendant medical providers, which were subpoenaed in connection with a Medicaid fraud investigation. However, the record requires a remand to evaluate the character of the other materials sought in order to apply the standard we adopt.

In August 1978, the Attorney General's office instituted a criminal investigation into the business and affairs of New Jersey Center for Counseling and Psychotherapy (NJCCP), a private mental health institution, and its nonprofit subsidiary Central Jersey Mental Health Center, Inc. (CJMHC). NJCCP was owned and operated by defendant Anthony Todaro, Ph.D., a psychologist, who also served as executive director of CJMHC. Paul Doliner, M.D., a psychiatrist, was CJMHC's medical director, and Marlene Todaro served as financial director in both corporations. The investigation continued for approximately two years. Pursuant to subpoena, CJMHC, NJCCP, Doliner, and the Todaros furnished a voluminous number of original documents to the statewide grand jury investigating the matter. The documents were primarily the billing and patient records of the two corporations and their professional members. The defendants state that they cooperated fully with the Attorney General's office despite the great inconvenience to their business and personal affairs.

On June 3, 1980, in connection with the investigations, the grand jury indicted defendants CJMHC, Doliner, and the Todaros. NJCCP was not indicted. The case was assigned to Union County for trial pursuant to Rule 3:14–1(k).

Defendant CJMHC pleaded guilty to six counts of Medicaid fraud. The remaining counts against CJMHC as well as all counts against defendants Doliner, and the Todaros were dismissed.

On April 2, 1982, CJMHC was sentenced in Union County. At that time, defendants orally requested that the State return all defendants' documents since criminal proceedings were now terminated. This request was denied.

On April 26, 1982, defendants moved before the sentencing judge for return of all original records of NJCCP, CJMHC, Doliner, and the Todaros in the possession of the Attorney General.

The State moved before the Mercer County judge assigned to the statewide grand jury under Rule 3:6–11(b) to retain the subpoenaed records and disclose them and the grand jury transcripts and exhibits to two divisions of the Attorney General's office (the Division of Law and the Division of Consumer Affairs), and to the Division of Medical Assistance and Health Services in the Department of Human Services.[1]

On May 21, 1982, the sentencing judge declined to hear the merits of defendants' motion and ordered that both motions be heard by the judge in charge of statewide grand jury matters.

On June 11, 1982, that court granted the State's motion for disclosure of the records and the grand jury testimony and the defendants' motion for return of its records. It gave the State ninety-five days to examine and copy defendants' records and directed that at the end of that time they be returned. The order was stayed to permit appeal. The Appellate Division affirmed the trial court on the basis of its oral opinion. We granted defendants' petition for certification. 94 *N.J.* 566 (1983).

I

Most discussions of grand jury issues begin with an attempt to penetrate the "long shadows of history [that] enshroud the

---

[1]The executive powers of the State are organized into "not more than twenty principal departments." *N.J. Const.* (1947), art. V, § 4, para. 1. One of these, the Department of Law and Public Safety (headed by the Attorney General), is further organized into divisions, including the Division of Law, *N.J.S.A.* 52:17B–3, the Division of Criminal Justice, *N.J.S.A.* 52:17B–99, and the Division of Consumer Affairs, *N.J.S.A.* 52:17B–120. The Department of Human Services includes the Division of Medical Assistance and Health Services. *N.J.S.A.* 30:4D–4.

The materials sought here are in the possession of the Division of Criminal Justice. Disclosure is sought, principally, to the Division of Consumer Affairs, for possible professional disciplinary action, and to the Division of Medical Assistance and Health Services, the agency responsbile for adminstering the State Medicaid program. In order to serve as these divisions' counsel, the Division of Law seeks disclosure.

precise moment when the first grand jury was established." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 *F.*2d 24, 27 (2d Cir.1981), *cert.* den. *sub nom. Connecticut v. Cuisinarts, Inc.*, —— *U.S.* ——, 103 *S.Ct.* 1520, 75 *L.Ed.*2d 945 (1983); *see* Note, *The Grand Jury: Powers, Procedures, and Problems*, 9 *Colum. J.L. & Soc. Probs.* 681, 681–85 (1973); Helmholz, *The Early History of the Grand Jury and the Canon Law*, 50 *U.Chi.L.Rev.* 613 (1983). Commentators differ about the purpose and functions of a grand jury in a modern system of criminal justice: whether it is more appropriately viewed as a sword or shield. *See* Orfield, *The Federal Grand Jury*, 22 *F.R.D.* 343 (1959); Kaufman, *The Grand Jury—Its Role and Its Powers*, 17 *F.R.D.* 331 (1955); Note, 9 *Colum.J.L. & Soc.Probs., supra.*

We deal here with a state grand jury. For purposes of this appeal, then, we view the grand jury as it actually functioned—as a criminal investigative agency. The State Grand Jury Act, *N.J.S.A.* 2A:73A–1 to –9, contemplates a grand jury quite unlike traditional county grand juries: "It is a new weapon, or agency, created by the Legislature to enforce the criminal law * * *." *State v. Zicarelli*, 122 *N.J.Super.* 225, 235 (App.Div.), certif. den., 63 *N.J.* 252, *cert.* den., 414 *U.S.* 875, 94 *S.Ct.* 71, 38 *L.Ed.* 2d 120 (1973).

The act authorizes the Supreme Court to promulgate rules and regulations necessary to govern the procedures of state grand juries. *N.J.S.A.* 2A:73A–3. We made our rules governing grand juries generally applicable to the state grand jury. *R.* 3:6–11(a). Those rules provide that except for disclosure to defendants under Rule 3:13–3 and Rule 3:17, "the requirement as to secrecy of proceedings of the grand jury shall remain as heretofore." *R.* 3:6–7.

Recently, in *United States v. Sells Eng'g, Inc.*, —— *U.S.* ——, 103 *S.Ct.* 3133, 77 *L.Ed.*2d 743 (1983), the Supreme Court reviewed the conditions under which attorneys and staff of the Civil Division of the Justice Department could obtain access to

grand jury materials compiled with the assistance of other Justice Department attorneys. The Court held such action permissible only when the government moves for court-ordered disclosure under Federal Rule of Criminal Procedure 6(e)(3)(C)(i) and makes a strong showing of particularized need.

We note at the outset that the central controversy in *Sells* was whether the attorneys in the Civil Division were entitled to disclosure as a matter of right under Rule 6(e)(3)(A)(i), permitting disclosure of grand jury materials to "an attorney for the government for use in the performance of such attorney's duty." The Court held that rule was never intended to grant free access to grand jury materials to attorneys or staff not working on the criminal matters to which the materials pertain. —— *U.S.* at ——, 103 *S.Ct.* at 3140–42, 77 *L.Ed.*2d at 755–57. The Court expressed concern that "[i]f prosecutors in a given case knew that their colleagues would be free to use the materials generated by the grand jury for a civil case, they might be tempted to manipulate the grand jury's powerful investigative tools to root out additional evidence useful in the civil suit * * *." —— *U.S.* at ——, 103 *S.Ct.* at 3142, 77 *L.Ed.*2d at 757. The Court saw such use as threatening the limits put on the Government's power of discovery and investigation outside the grand jury context. —— *U.S.* at ——, 103 *S.Ct.* at 3142, 77 *L.Ed.*2d at 758. Accordingly, the Court interpreted Rule 6 as requiring that any disclosure to attorneys other than prosecutors be judicially supervised rather than automatic. —— *U.S.* at ——, 103 *S.Ct.* at 3143, 77 *L.Ed.*2d at 759; *see also Illinois v. Abbott & Assoc., Inc.*, 460 *U.S.* 557, 103 *S.Ct.* 1356, 75 *L.Ed.*2d 281 (1983) (Clayton Act provisions do not grant state attorney general special access to federal grand jury materials; disclosure must be judicially approved); *In re Petition to Inspect and Copy Grand Jury Materials*, 576 *F.Supp.* 1275 (S.D.Fla.1983) (court has inherent power to disclose to federally authorized judicial Special Investigating Committee investigating indicted but exonerated federal judge).

Our rules make no provision for disclosure except in the two instances authorizing disclosure to defendants. *R.* 3:13–3; *R.* 3:17. In the absence of a governing rule or statute, we agree that disclosure to government attorneys other than prosecutors must be subject to court approval.[2] The standard we adopt is a strong showing of particularized need that outweighs the interest in grand jury secrecy. Government attorneys and agencies must make the same showing as civil litigants.[3] The public interest will be evaluated in weighing the need. The standard we adopt today is the Supreme Court's test and we conclude that since the principles that underlie federal and state grand jury secrecy are identical, and since our courts have previously looked to federal precedent for guidance, our standards should be harmonized where possible.

In order that our trial courts have guidance, we must give content to the phrase "strong showing of particularized need." Almost every court that has considered the issue of civil disclosure of grand jury materials has phrased the test in much the same way—one that balances the need for discovery of the materials against the interest of grand jury secrecy. *See, e.g., Douglas Oil Co. v. Petrol Stops Northwest,* 441 *U.S.* 211, 222–23, 99 *S.Ct.* 1667, 1674–75, 60 *L.Ed.*2d 156, 166–67 (1979); *United States v. Procter & Gamble Co.,* 356 *U.S.* 677, 682–83, 78 *S.Ct.* 983, 986–87, 2 *L.Ed.*2d 1077, 1081–82 (1958); *Lucas v. Turner,* 725 *F.*2d 1095, 1099–1102 (7th Cir.1984); *U.S. Indus-*

---

[2]The Legislature has expressed concern about unauthorized disclosure of grand jury material. *See N.J.S.A.* 2A:73B–3 (unauthorized disclosure of grand jury materials with intent to injure another is fourth degree crime). We believe that the best way to reconcile the interests is by court approval.

[3]In *Doe v. Klein,* 143 *N.J.Super.* 134, 141, 143 (App.Div.1976), the Appellate Division, in denying the turnover request of the Public Advocate, found an insufficient showing of "compelling circumstances or need," (citing *Pittsburgh Plate Glass Co. v. United States,* 360 *U.S.* 395, 79 *S.Ct.* 1237, 3 *L.Ed.*2d 1323 (1959), and *United States v. Procter & Gamble Co.,* 356 *U.S.* 677, 78 *S.Ct.* 983, 2 *L.Ed.*2d 1077 (1958)). *See also In re 15th Essex County Grand Jury,* 111 *N.J.Super.* 564 (App.Div.1970).

*tries, Inc. v. United States Dist. Ct.,* 345 *F.*2d 18, 21 (9th Cir.), *cert.* den., 382 *U.S.* 814, 86 *S.Ct.* 32, 15 *L.Ed.*2d 62 (1965). In *Procter & Gamble,* the Supreme Court set out those policies:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt. [356 *U.S.* at 681 n. 6, 78 *S.Ct.* at 986 n. 6, 2 *L.Ed.*2d at 1081 n. 6 (quoting *United States v. Rose,* 215 *F.*2d 617, 628–29 (3d Cir.1954).]

*See also Doe v. Klein,* 143 *N.J.Super.* at 140.

■ It may be seen at once that the reasons for secrecy are primarily related to the work of an ongoing grand jury investigation, not the work of a grand jury that has concluded its deliberations and returned either an indictment or a no bill. When either of those events occurs, the first three factors will almost invariably disappear.

■ The two remaining factors require consideration. Encouragement of witness cooperation is fundamental to the effectiveness of grand juries. Federal courts have hesitated to impinge upon that interest. *In re Grand Jury Investigation No. 78–184,* 642 *F.*2d 1184, 1192 (9th Cir.1981), aff'd *sub nom. United States v. Sells Eng'g, Inc.,* —— *U.S.* ——, 103 *S.Ct.* 3133, 77 *L.Ed.*2d 743 (1983); *In re Petition to Inspect and Copy Grand Jury Materials,* 576 *F.Supp.* at 1281–82. But in New Jersey every witness is on notice that his or her testimony will be disclosed to a defendant upon request. The reluctant witness knows that the more likely the indictment, the more likely the evidence will be disclosed.[4] Witness cooperation would not appear to be strongly implicated in New Jersey.

---

[4] New Jersey has an automatic discovery rule with respect to defendant's access to grand jury materials, *R.* 3:13–3(a)(3) and (8), in contrast to the

 The final factor, shielding the innocent suspect from disclosure of grand jury materials, would remain to be considered by a court. *In re Petition to Inspect and Copy Grand Jury Materials*, 576 *F.Supp.* at 1282. However, in the context of this case, the factor is inapplicable since what is being sought are the records of the defendants' business; any accusations of guilt are irrelevant.

 We believe that particularized need is best evaluated by examining the character of the materials sought to be disclosed. A few examples will suffice. In an antitrust investigation, witnesses before the grand jury may frequently be employees, officers, customers, or competitors of the target. Should there be a no bill, there would be a strong policy militating against disclosure of their testimony. *Pittsburgh Plate Glass Co. v. United States*, 360 *U.S.* 395, 400, 79 *S.Ct.* 1237, 1241, 3 *L.Ed.*2d 1323, 1327 (1959). Less compelling is the need for secrecy when the testimony of officers and employees of the defendant has already been revealed to the defendant to aid in criminal defense. Once the identity and role of such

---

limited rights of a federal defendant under the Jencks Act, 18 *U.S.C.A.* § 3500 (discovery of statements permitted after witness has testified on direct examination). Our State's criminal discovery rules have been described as

probably the most liberal in the nation. We have totally rejected the notion that the criminal trial is a contest. Accordingly, grand jury minutes are available to all defendants subsequent to a routine discovery request. Discovery of grand jury minutes provides an important check on any possible abuses in the grand jury process. Moreover, full discovery of grand jury minutes provides the basis for legal challenges to the sufficiency, weight, competency and admissibility of the evidence presented. *Grand Jury Reform: Hearings on H.R. 94 Before the Subcommittee on Immigration, Citizenship, and International Law of the House Committee on the Judiciary,* 95th Cong., 1st Sess., pt. 1, at 343 (1977) (Statement of William F. Hyland, Attorney General of New Jersey, and Robert J. DelTufo, Assistant Attorney General of New Jersey and Director of Division of Criminal Justice), *quoted in* Arenella, *Reforming the State Grand Jury System: A Model Grand Jury Act,* 13 *Rutgers L.J.* 1, 24 n. 72 (1981).

This difference between the state and federal rules will be reflected in the application of the disclosure standard.

employees has been disclosed to their own employers, the policy of secrecy does not prevail. *Illinois v. Sarbaugh*, 552 *F.*2d 768, 775 (7th Cir.), *cert.* den. *sub nom. J.L. Simmons Co., Inc. v. Illinois*, 434 *U.S.* 889, 98 *S.Ct.* 262, 54 *L.Ed.*2d 174 (1977); *In re Cement-Concrete Block, Chicago Area*, 381 *F.Supp.* 1108, 1111 (N.D.Ill.1974). Finally, when the material that is sought is the property of defendant, it is hard to see how any principle of secrecy is involved.

When the concerns for secrecy are not implicated, the most relevant factor in the court's decision to disclose is whether or not there has been abuse of the grand jury. The grand jury has traditionally occupied a high place in our system of justice. It has always been extended extraordinary powers of investigation and great responsibility for directing its own efforts:

> Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." [*Sells*, — *U.S.* at —, 103 *S.Ct.* at 3137, 77 *L.Ed.*2d at 752 (quoting *United States v. Calandra*, 414 *U.S.* 338, 343, 94 *S.Ct.* 613, 617, 38 *L.Ed.*2d 561, 569 (1974)).]

One commentator has contrasted the "awesome powers" of the prosecutor with the "limited rights" of the citizen in the grand jury context. Arenella, *Reforming the State Grand Jury System: A Model Grand Jury Act*, 13 *Rutgers L.J.* 1, 9–10 (1981). Prosecutors may subpoena witnesses upon short notice and without justification beforehand for the need for the testimony, *see In re Application of Waterfront Comm'n*, 32 *N.J.* 323, 340 (1960); they may conduct investigations without first establishing the likelihood that any offense has been committed, *see In re Addonizio*, 53 *N.J.* 107, 124–27 (1968);

they may grant the witness immunity and use the court's contempt power to force compliance with the immunity order, *N.J.S.A.* 2A:81–17.3; they may cause a recalcitrant witness to be imprisoned for the remainder of the grand jury's term. *Id.*

In contrast, grand jury witnesses have been limited in the rights afforded: no absolute right to be informed of the privilege against self-incrimination unless a target, *see State v. Vinegra*, 73 *N.J.* 484, 488 (1977); no right to counsel in the grand jury room, *see Van Horn v. City of Trenton*, 80 *N.J.* 528, 536 & n. 2 (1979); no right to remain silent once immunity is granted, *N.J.S.A.* 2A:81–17.3; no right to prior notice of the subject matter under investigation, and no right to question whether the prosecutor's inquiries are relevant to the subject matter of the investigation, *see United States v. Dionisio*, 410 *U.S.* 1, 13–15 & n. 12, 93 *S.Ct.* 764, 771 & n. 12, 35 *L.Ed.*2d 67, 79–80 & n. 12 (1973); *In re Petition to Compel Testimony of Tuso*, 73 *N.J.* 575, 579 (1977).

Balancing these interests is a delicate task for courts. We must ensure that grand juries have the powers to either "ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution," *Sells*, —— *U.S.* at ——, 103 *S.Ct.* at 3138, 77 *L.Ed.*2d at 752, and that these powers are not subverted to unauthorized ends. *See, e.g.,* Comment, *Federal Grand Jury Investigation of Political Dissidents*, 7 *Harv. C.R.–C.L.L.Rev.* 432 (1972), and cases cited therein (abuse of grand jury process for political reasons). A court should carefully consider allegations of abuse; such allegations are relevant to the disclosure decision. *In re Grand Jury Investigation No. 78–184*, 642 *F.*2d at 1192. There must be objective standards for ascertaining the presence or absence of investigative abuse. *Cf. State v. Bruzzese*, 94 *N.J.* 210, 219 (1983) (objective determination of constitutionality of search and seizure). We agree with the State's articulation that the court's determination should turn upon objective criteria such as: (1) the stated purpose of the grand jury investigation; (2)

whether an indictment was returned; (3) the degree of civil agency involvement in the grand jury investigation; (4) whether the agency is seeking access to evidence to which it would not be entitled under its own investigative powers; and (5) whether the grand jury investigation was instituted at the behest of the agency. *See* Note, *Federal Agency Access to Grand Jury Transcripts Under Rule 6(e)*, 80 *Mich.L.Rev.* 1665, 1687–88 (1982); Note, *Facilitating Administrative Agency Access to Grand Jury Material*, 91 *Yale L.J.* 1614, 1634–35 (1982).

The standard we adopt will include these criteria. When they are followed and "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil*, 441 *U.S.* at 223, 99 *S.Ct.* at 1675, 60 *L.Ed.*2d at 167; *see also U.S. Industries*, 345 *F.*2d at 21 ("[I]f the reasons for maintaining secrecy do not apply at all in a given situation, or apply to only an insignificant degree, the party seeking disclosure should not be required to demonstrate a large compelling need."). This is consistent with the *Douglas Oil* standard, reaffirmed in *Sells*, which is "highly flexible [and] adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *Sells*, —— *U.S.* at ——, 103 *S.Ct.* at 3149, 77 *L.Ed.*2d at 766.

In *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 717 *F.*2d 1136 (7th Cir.1983), the court explained that the *Sells* standard accommodates any relevant considerations, including those peculiar to government movants. Thus, there "may be less leakage and improper use of grand jury materials when disclosed to government attorneys than when disclosed to private parties. Further, the public interest to be served by disclosure to the government is * * * a legitimate consideration." *Id.* at 1138. Cost considerations, although not sufficient, are relevant. On the other hand the availability to the government of other statutory or regulatory discovery may

weigh against disclosure. The *Miller* court concluded: "In sum, what is called for by the *Sells* standard is the careful and sound exercise of discretion by district judges in weighing all the factors which compete in grand jury matters." *Id.*[5]

## II

Applying these principles to the facts of this case leads us to affirm in part and remand in part for further proceedings. The target of the civil investigation must receive notice of the application to turn over the grand jury materials. That was done here. As to the merits of the decision, we begin by emphasizing that a court making this decision must focus primarily on the materials to be disclosed. We find the record insufficient to evaluate the State's request to disclose records other than the defendants' records.

### (a) *Defendants' Office Records*

Almost without exception, the materials sought here consist of the defendants' patient billing records and medical records. These were the subject of the defendants' cross-motion for return. Standing alone, disclosure of these records would appear not to implicate factors (4) and (5) of the *Procter & Gamble* test. *See supra* at 247. With respect to encourage- ment of free disclosure by persons with knowledge of crime, there is nothing here that would serve to deter that end by production of defendants' office records.

---

[5]The *Miller* court viewed the selective retention of two thousand pages of documents as preferable to reissuing a subpoena for one million pages to be culled again. However, it viewed the government's request for transcripts that would disclose the verbatim records of the grand jury as a close question on the standard of particularized need. It considered that the evidence might not be readily available since the grand jury witnesses had testified only after a grant of immunity. It remanded that issue to the district court for further findings. 717 *F*.2d at 1139–40; *cf. Lucas v. Turner*, 725 *F*.2d 1095 (7th Cir.1984) (request for disclosure of state grand jury materials in federal civil rights action remanded; plaintiffs must demonstrate prompt and exhaustive efforts at discovery and particularized need before disclosure would be ordered).

Factor (5) for grand jury secrecy, protecting the innocent accused who is exonerated from disclosure of the fact that he or she has been under investigation, has little application in this case since the indictment of all the defendants except NJCCP moots that issue, and as to NJCCP, its symbiotic relationship with the indicted defendants makes that issue of slight importance.

No one disputes that the records are necessary to the civil investigations that the State wants to pursue. The trial court found that the State had a "compelling and particularized need" for them. The court's analysis, however, reflected the *Sells* standard that we have adopted. Defendants did not raise any objections they would have had if the materials had been subpoenaed directly by the agency. Instead, defendants argue that since the agencies had discovery powers to obtain the information, there was no need to turn over the grand jury material. But we must also recognize that unnecessary precautions may have to be taken to avert the possibility of records being lost in the process. In *SEC v. National Student Mktg. Corp.*, 430 *F.Supp.* 639 (D.D.C.1977), the court noted that although a high degree of materiality and relevance does not alone establish need, when the evidence is otherwise available (there by deposition of the same witnesses), the policy reasons for secrecy are diminished. *Id.* at 641. We believe that the trial court here correctly balanced the interests of the parties by providing that the Division of Criminal Justice could disclose, but had to preserve the materials and return the originals or copies to defendants.

In making its evaluation of need, the trial court expressly considered that the disclosure would serve the public purposes of recovering lost funds and protecting the public's health and safety from professional misconduct. *Cf. Matter of Grand Jury Proceedings, Miller Brewing Co.*, 717 *F.*2d at 1140 (public interest in collecting multi-million dollar tax liability is factor to be weighed in disclosure decision).

Finally, we find no suggestion of abuse of the grand jury process present in this record. For all that appears, the investigation confined itself to the billing practices that raised questions of Medicaid fraud. Those records were readily available to the Division of Medical Assistance and Health Services under *N.J.S.A.* 30:4D–7(n). The trial court also pointed to the discovery powers of the Attorney General acting through the Division of Consumer Affairs under *N.J.S.A.* 52:17B–122. There is no suggestion that the grand jury was diverted to inquire into other areas of professional incompetence.[6] There may be problems present with respect to the confidentiality of patients' records. *N.J.S.A.* 45:14B–28 (psychologist-patient privilege); *N.J.S.A.* 2A:84A–22.1 to –22.7 (physician-patient privilege); *N.J.A.C.* 10:49–1.22 (confidentiality of Medicaid records); *Gabor v. Hyland*, 166 *N.J.Super.* 275 (App.Div.1979). Those claims of privilege were not asserted below. In some circumstances, a court may wish to give notice to the third party that may have an interest in resisting disclosure of the materials.

In conclusion, we hold that the State has made a strong showing of a particularized need for these specific materials, that the policy reasons for secrecy of grand jury materials are minimal in view of the character of the materials, and that there is no showing of abuse of the grand jury process.

### (b) *Grand Jury Developed Evidence*

 With respect to the other materials involved, we find the record inadequate to evaluate the need for their turn-

---

[6]We note that the Medicaid fraud investigation is a "multi-disciplinary approach to detection and prevention of such abuses." Hyland & DelTufo, *The New Jersey Experience in Combatting Medicaid Fraud*, 5 *Crim.Just. Q.* 1, 1 (Spring 1977). The State's avowed policy is to coordinate civil, criminal, and administrative powers. *Id.* at 4. However, the grand jury here was not used as a tool of the agencies; these agencies have been given powers of discovery and subpoena by the Legislature. Therefore we need not decide today whether extensive involvement in grand jury proceedings by an agency without its own investigative power would be an abuse of the process.

over balanced against the interests of grand jury secrecy. The materials have simply not been identified in any detail sufficient to make an informed judgment. In the future, the agency seeking disclosure should identify the materials sought to be disclosed with sufficient particularity that a court may distinguish between pre-existing documentary evidence, and transcripts, exhibits, or other materials developed by the grand jury process. The parties here did not have the advantage of the *Sells* decision at the time the motion was argued and did not focus on the interests peculiar to the specific material. On balance, we believe that there will be little justification for continuing secrecy as to these materials because, as we understand the record below, all of those materials were previously disclosed to the defendants as part of pretrial discovery under Rule 3:17. That being so, factor (4) of the *Procter & Gamble* test (witness encouragement) is not present. Factor (5) (shielding the falsely accused) may be an issue. There may also remain for consideration a claim of grand jury abuse based on the fact that the materials would not have been readily discoverable in a civil proceeding. The parties are entitled to address that issue. The agency's disclosure requests must still satisfy the normal discovery qualifications of relevance and privilege. *See R.* 4:10–2(a). Of course an agency may not investigate matters or receive materials unrelated to its jurisdiction. *See United States v. Morton Salt Co.,* 338 *U.S.* 632, 652–53, 70 *S.Ct.* 357, 369, 94 *L.Ed.* 401, 416 (1950); *Gillhaus Beverage Co., Inc. v. Lerner,* 78 *N.J.* 499, 510–11 (1979). At oral argument before us, the State appeared to limit its request to materials that would otherwise be readily discoverable. If so, such issues may rapidly dissipate on remand. The State may not need or want to disclose the grand jury transcripts that reveal the inner workings of the grand jury. *See Matter of Grand Jury Proceedings, Miller Brew. Co.,* 717 *F.*2d at 1139. To the extent that the transcripts include testimony of available witnesses previously disclosed to defendants in criminal discovery, no further interest in secrecy is shown.

■ To summarize, a court should require as a prerequisite to the turnover of grand jury evidence to civil authorities, a two-step judicial determination that such a turnover will be consistent with both the policies furthered by grand jury secrecy and the deterrence of abuse of grand jury process. We find those policies clearly met with respect to defendants' records, which they seek to have returned without affording government investigators access. We find that a remand is necessary to evaluate the application of these policies in the context of the remaining materials sought to be disclosed by the State.

The judgment below is affirmed in part and reversed in part. The matter is remanded to the trial court to allow consideration of any claims special to the remainder of the materials sought to be disclosed.

For affirmance in part, reversal in part & remandment—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.