213 N.J. Super. 404 (1986)
517 A.2d 501
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BROOKE MURPHY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1986.
Decided November 6, 1986.
*405 Before Judges PRESSLER, GAULKIN and BAIME.
Michael Critchley argued the cause for appellant (Critchley & Roche, attorneys; Michael Critchley, on the brief).
Catherine A. Foddai, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Catherine A. Foddai, of counsel; Donna Chin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
An indictment was returned by the State Grand Jury charging defendant and 19 others with second degree conspiracy *406 (N.J.S.A. 2C:5-2) and numerous counts of third degree theft by deception (N.J.S.A. 2C:20-4). The indictment alleged that the conspirators defrauded 15 insurance companies of approximately $1,000,000 by presenting false claims based upon fictitious automobile accidents. According to the indictment, membership in the conspiracy included licensed physicians, members of the bar and various claims adjusters. Others allegedly falsely represented themselves as attorneys for the purpose of negotiating and settling fictitious insurance claims.
Following a protracted jury trial, defendant was found guilty of conspiracy and eight counts of theft by deception. At sentencing, the trial judge merged the substantive counts into the conspiracy conviction,[1]see State v. Connell, 208 N.J. Super. 688, 697 (App.Div. 1986), and imposed a custodial term of seven years. As part of the sentence, defendant was ordered to serve two years and four months without parole eligibility and to pay a fine of $100,000.
On appeal, defendant seeks a reversal of his conviction arguing that he is entitled to a dismissal of the indictment with prejudice. Although phrased in a variety of ways, defendant's contention is grounded upon the claim of prosecutorial misconduct during the course of the grand jury proceedings. After the jurors were empanelled the deputy attorney general assigned to present the matter and his superior were advised that one of the jurors was employed by Allstate Insurance Company and one by State Farm Insurance Company. These carriers were alleged to have been among the victims of the fraudulent scheme. Rather than apprising the assignment judge of these facts, the deputy attorneys general permitted one of the jurors to remain on the panel and excused the other at her request from further service in the case. Defendant contends that the deputy attorneys general encroached upon a power expressly *407 reserved to the judiciary and that such prosecutorial impropriety requires vitiation of the conviction and dismissal of the indictment without any inquiry into whether or not he was prejudiced. Alternatively, defendant claims that the grand juror who remained serving in the case was biased and that his lack of impartiality tainted the entire grand jury proceedings.
The facts are not in dispute. The State Grand Jury was empanelled in April 1983. In his prefatory comments, Deputy Attorney General Walter Krako questioned the grand jurors concerning their knowledge of the parties and witnesses. In response, one of the grand jurors mentioned that she was employed by Allstate Insurance Company. Upon further interrogation, the juror denied possessing any knowledge of the persons or offices involved in the case and stated unequivocally that she could perform her obligation in an impartial manner.
At some later point, however, the juror contacted Krako's supervisor, Deputy Attorney General Michael Bozza, and apprised him of the fact that she was involved in litigation against Allstate. In light of the pending litigation the juror expressed her desire not to participate further in the grand jury proceedings. Deputy Attorney General Bozza agreed to excuse the juror from further service in the case. The juror was told that she would be informed when the matter concluded at which time she would be required to serve in other cases for the remainder of her term.
Although this conversation was not stenographically recorded, the facts were fully recited at a subsequent conference attended by the foreman of the grand jury and both deputy attorneys general. During these proceedings, which were transcribed, the foreman added that the juror never discussed the specific facts of the case in the presence of other jurors. Rather, any statements made by her concerning Allstate consisted solely of "generalities."
After the grand jury was apprised of the voluntary disqualification of the juror, further evidence was presented. During *408 the luncheon recess on that same day, another juror contacted Deputy Attorney General Krako and expressed his concern with his ability to serve further in the case because he was employed by State Farm Insurance Company. Immediately thereafter, both deputy attorneys general met with the foreman. After a brief discussion, the foreman was instructed to ask the juror whether he had any knowledge of the matters under investigation. The foreman was directed to meet with the juror and to return with whatever information he received.
Following his conference with the juror, the foreman again met with both deputy attorneys general. According to the foreman the juror stated that he had no knowledge of the specific facts of the case. However, the juror observed that he might harbor some "prejudice." The foreman went on to state that the matter was brought to the attention of the remaining jurors who voted to have the juror remain on the panel.
Based upon the foreman's account of his conversation with the juror, another meeting was conducted. Both deputy attorneys general, the foreman and the juror employed by State Farm were in attendance. In response to Deputy Attorney General Bozza's questions, the juror stated that he could render a judgment based solely on the evidence presented. With respect to his prior statements concerning "prejudice," the juror explained:
I expressed before that I had no objection to sitting on the panel. I just wanted to make it known that I work for an insurance company and my opinions, because of that, may not be purely as objective as someone else's not having that background.
Deputy Attorney General Bozza stated that "[t]here [was] nothing improper" in a juror "bringing to bear all [his] collective experience" when determining factual issues. He cautioned, however, that any particularized information or factual knowledge derived from the juror's employment "relevant to the case" could not be utilized. Thereafter, the juror expressed his conclusion that he could be fair and objective and that his employment by State Farm posed no problem in that respect.
*409 Following these discussions, the juror remained on the panel. None of these events was brought to the attention of the assignment judge. Following presentation of the matter, the grand jury voted to return the indictment. There were no dissenting votes. Voting on the individual counts took place on three separate days during which 18 and 19 jurors participated.
After the return of the indictment, defendant moved to dismiss on the basis of prosecutorial misconduct. Judge Beglin initially determined that the matter should have been brought to the attention of the assignment judge having supervisory authority over the State Grand Jury under R. 3:6-11. He nevertheless found from the record that defendant was in no sense prejudiced. In that respect, the judge noted that neither of the two grand jurors possessed knowledge of facts pertaining to the case. Judge Beglin further pointed to the fact that the juror who remained on the panel unequivocally expressed his conclusion that he could render a judgment in an impartial manner. Finally, the judge noted that the evidence presented to the grand jury was substantial and supported the criminal charges set forth in the indictment.
We affirm. We hold that where a prosecutor obtains information which supports a legitimate and colorable basis for believing that a grand juror lacks impartiality, he may not unilaterally decide to allow that juror to remain on the panel. Rather, under such circumstances the prosecutor is duty-bound to apprise the assignment judge so that appropriate hearings can be conducted and the facts fully developed. We nevertheless agree with Judge Beglin's finding that defendant was not prejudiced by the dereliction of the deputy attorneys general. We thus perceive no justifiable basis for vitiating defendant's conviction.

I
The triadic relationship between the courts, the prosecutor and the grand jury has been the source of much litigation. See, *410 e.g., State v. Doliner, 96 N.J. 236, 249-252 (1984); State v. Vinegra, 73 N.J. 484, 497-505 (1977) (Hughes, C.J., dissenting); State v. Hilltop Private Nursing Home, Inc., 177 N.J. Super. 377, 388-389 (App.Div. 1981); State v. Schamberg, 146 N.J. Super. 559, 563 (App.Div. 1977), certif. den. 75 N.J. 10 (1977); State v. Hart, 139 N.J. Super. 565, 567-568 (App.Div. 1976). Historically, "[t]he grand jury [has been considered] an arm of the court  a judicial body." In re Jeck, 26 N.J. Super. 514, 519 (App.Div. 1953), certif. den. 13 N.J. 429 (1953). It has been said that "while the grand jury is not and should not be [a] captive of any of the three branches," United States v. Chanen, 549 F.2d 1306, 1312 (9 Cir.1977), cert. den. 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977), it nevertheless exercises its powers under the authority and supervision of the judiciary. United States v. Stevens, 510 F.2d 1101, 1106 (5 Cir.1975), reh'g den. 512 F.2d 1406 (5 Cir.1975).
Our Supreme Court has vested in the assignment judge the plenary responsibility for the administration of grand juries in his vicinage. R. 3:6-1. See also In re: Petit Jury Panels, Essex County, 60 N.J. 554, 559-562 (1972); State v. Ramseur, 197 N.J. Super. 565, 590 (Law Div. 1984). "While the grand jury is an independent body in investigating the facts and in making presentments and indictments, it necessarily looks to the judge presiding in the county ... for instructions on the law to govern its deliberations...." In re Camden County Grand Jury, 10 N.J. 23, 34 (1952). Of course, "[w]e recognize that there is no impropriety in the prosecutor assisting the investigation and examination of witnesses, in advising the grand jury as to the admissibility of evidence and the proper mode of procedure and in explaining the testimony with reference to the law of the case." State v. Hart, supra, 139 N.J. Super. at 567. Recognizing the necessary day-by-day assistance provided the grand jury by the prosecuting attorney, we nevertheless emphasize the primacy of the assignment judge's supervisory role.
Judicial supervision is necessary to insure maintenance of the independence of the grand jury. The institution of the grand *411 jury is "deeply rooted in Anglo-American history." United States v. Calandra, 414 U.S. 338, 342, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568 (1974). The grand jury is a "powerful instrument of government," State v. Vinegra, supra, 73 N.J. at 497 (Hughes, C.J., dissenting) and has traditionally "been accorded wide latitude to inquire into violations of [the] criminal law." United States v. Calandra, supra, 414 U.S. at 343, 94 S.Ct. at 617, 38 L.Ed.2d at 568. No judge presides to monitor its proceedings. It deliberates in secret and determines for itself the course of its inquiry. The grand jury is not "an officious meddler." In re Addonizio, 53 N.J. 107, 124 (1968). It "may investigate upon its own suggestion and, in addition to indictments for crime, it may return `presentments' upon conditions of public interest even though no violation of a penal statute is found." Ibid. "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered." United States v. Calandra, supra, 414 U.S. at 344-345, 94 S.Ct. at 618, 38 L.Ed.2d at 569.
Mere recitation of these powers discloses the potential for abuse and the need to insure that the independence and integrity of the grand jury be defended "whether it is impinged upon mistakenly or from honest zeal ... or whether it is interfered with at the hands of an inordinately aggressive or politically ambitious and publicity conscious prosecuting attorney." State v. Vinegra, supra, 73 N.J. at 499 (Hughes, C.J., dissenting). We do not suggest either postulate in the present appeal. We merely "mention the contrasting motivations to indicate that in either case the [practical] result is exactly the same  the corruption of the whole process, perilous alike to the citizen and to the administration of justice." Ibid.
Against this backdrop, we are of the view that whenever there is a legitimate and colorable issue as to the propriety of a grand juror remaining on the panel because of possible prejudice, the prosecutor may not simply decide to permit that juror *412 to continue to serve in the case. It is incumbent upon the prosecutor to advise the assignment judge of the problem so that appropriate action can be taken.[2] Under such circumstances, the assignment judge is to determine whether the juror can fairly remain in the case.[3] With respect to the State Grand Jury, such authority is vested in the assignment judge designated by the Chief Justice, under N.J.S.A. 2A:73A-6, to supervise that body. We do not suggest that every question as to whether a grand juror shall absent himself from a particular session requires the intervention of the assignment judge. See State v. Del Fino, 100 N.J. 154, 164 (1985). We merely hold that where the prosecutor is made aware of facts which support a legitimate and colorable belief that a juror may be prejudiced, he may not unilaterally decide to allow that juror to remain on the panel. Rather, it is incumbent upon him to so advise the assignment judge.[4]

*413 II
We next turn to defendant's argument that an automatic reversal is required because of the misconduct of the deputy attorneys general. Defendant claims that such a per se rule is necessary to deter future prosecutorial impropriety. In support of his contention, defendant cites decisions holding that "[w]hen the integrity of the process is at stake, prejudice is not a precondition to successfully asserting impairment of the fundamental right of proper jury selection." State v. Wagner, 180 N.J. Super. 564, 567 (App.Div. 1981). See also State v. Pereira, 202 N.J. Super. 434, 438 (App.Div. 1985); State v. Williams, 190 N.J. Super. 111, 116-117 (App.Div. 1983).
Of course, we recognize that where there has been a wholesale failure to comply with the essential elements of a scheme devised by the Legislature to assure impartiality a reversal may be warranted without reference to prejudice. See State v. Sturdivant, 31 N.J. 165, 176 (1959), cert. den. 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873 (1960). We note, however, that this principle has generally been confined to irregularities affecting petit rather than grand juries. We merely point to the obvious differences between the two. A grand jury does not try a case on the merits and does not determine guilt or innocence. State v. McFeeley, 136 N.J.L. 102, 111 (Sup.Ct. 1947).
We cannot accept defendant's view that the dereliction of the deputy attorneys general in this case warrants an automatic reversal. We are convinced that the violation of the rule here was not willful or intentional, but rather an irregularity having no effect upon the meritorious determination by the grand jury of the substantial evidence submitted for its consideration. See State v. Manney, 24 N.J. 571, 583 (1957). Our review of the record convinces us that neither the defendant nor the integrity *414 of the grand jury system was prejudiced in any real sense. In light of our decision, it is unnecessary for us to consider the State's contention that the verdict of the petit jury, which was rendered following an apparently error-free trial, rendered harmless any irregularity in the grand jury proceedings. See United States v. Mechanik, ___ U.S. ___, ___-___, 106 S.Ct. 938, 941-944, 89 L.Ed.2d 50, 57-58 (1986); State v. Lee, 211 N.J. Super. 590, 599 (App.Div. 1986).
Accordingly, the judgment of conviction is affirmed.
NOTES
[1] The State has not filed a cross-appeal and thus we have no occasion to determine whether the judge correctly merged those convictions.
[2] In reaching this conclusion, we do not rely upon N.J.S.A. 2A:78-1 and 2. Under those statutes, a grand juror can be "excused" or "discharged" from service only by the assignment judge or a judge designated by him. See In re Jeck, supra, 26 N.J. Super. at 518. We are convinced that N.J.S.A. 2A:78-1 and 2 refer to the total release of a juror from service, not a temporary recusal or disqualification from sitting in a particular case.
[3] We note that R. 3:6-2 permits the prosecutor and the defendant to challenge the grand jury array and the legal qualifications of individual jurors. Such challenges "shall be tried by the Assignment Judge, or a judge designated by him." R. 3:6-2. The rule further states that "[i]f a defendant has already been indicted, such challenges may be the basis of a motion to dismiss the indictment." R. 3:6-2. A motion to dismiss an indictment may provide a viable remedy in cases in which a grand juror without appropriate legal qualifications has improperly served in a particular case. We nevertheless perceive nothing in the rule which derogates against the principle announced here precluding the prosecutor from unilaterally deciding to allow a grand juror to remain serving despite information that the juror may lack impartiality.
[4] We reject the suggestion contained in the State's brief that the grand jury has the power to determine the objectivity of its members. Where a grand juror expresses concern relating to his ability to be fair, the facts underlying such concern should be fully developed and explored. If such information is conveyed to other grand jurors, they too may become tainted. Wholly apart from these practical difficulties, we deem it obvious that neither the grand jury collectively nor the foreman should be the final arbiter of the qualifications of its members.