**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0522-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EUGENE LAVERGNE, a/k/a
EUGENE MARTIN LAVERGNE,

    Defendant-Appellant.

_____

        Submitted January 14, 2019 – Decided January 29, 2019

        Before Judges Fasciale and Rose.

        On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 12-11-1894.

        Joseph E. Krakora, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

        Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A grand jury returned two separate indictments against defendant simultaneously.[1]  In the charges related to the first indictment (No. 12-11-1840-Z), a jury found defendant guilty of second-degree misapplication of entrusted property, N.J.S.A. 2C:21-15; and fourth-degree contempt, N.J.S.A. 2C:29-9(a). We affirmed those convictions.  State v. LaVergne, No. A-3210-14 (App Div. Nov. 7, 2018).  As to the second indictment (No. 12-11-1894-Z), and shortly after that jury trial ended, defendant pled guilty to fourth-degree unauthorized practice of law, N.J.S.A. 2C:21-22, which is the conviction from which he now appeals.  In this appeal, defendant makes the same arguments he made in the first appeal.

On appeal, defendant argues:

> POINT I
>
> THE TRIAL COURT ERRED BY DENYING [DEFENDANT]'S MOTION TO DISMISS THE INDICTMENT BECAUSE [A] MONMOUTH COUNTY GRAND JURY DID NOT HAVE JURISDICTION TO HEAR THE CASE AND RETURN AN INDICTMENT AGAINST [DEFENDANT].
>
> > A. [Defendant] Did Not Waive His Right to Raise a Jurisdictional Challenge to the

---

[1]  Defendant is a disbarred attorney.  See In re LaVergne, 212 N.J. 427 (2012).

A-0522-17T4

Monmouth County Grand Jury. (Not Raised Below).

B. The Trial Court Abused its Discretion in Not Dismissing the Indictment on the Grounds That the Grand Jury Lacked Jurisdiction.

We affirm.

## I.

The pertinent facts of this case begin back in 2011 when defendant appeared before the Monmouth County Assignment Judge (the first judge) on an order to show cause (OTSC) filed by defendant in an attorney ethics matter. Defendant sought the recusal of the first judge based on a claim filed by defendant in a pending federal lawsuit. The first judge recused himself and arranged to have the matter heard in Middlesex County.

Approximately one year later, the Monmouth County Prosecutors Office (MCPO) prepared to present two criminal cases involving defendant to a grand jury. Because of the prior conflict, the first judge advised the MCPO to bring any issues during presentation to the grand jury to a second judge. The first judge presided over the empanelment of the grand jury to hear a multitude of matters over several months, not specifically an investigative jury solely for defendant. Immediately upon the State's presentation of defendant's case,

A-0522-17T4

defendant filed an OTSC seeking the recusal of the MCPO and the first judge, and transfer out of county. The second judge conducted a hearing and denied defendant's motions.

Thereafter, defendant filed six motions, including a motion to disqualify the prosecutor, recuse an assigned Monmouth County judge (the third judge), and transfer venue to another county. Although the third judge determined there was "no basis" for him to disqualify himself, on April 5, 2013, prior to defendant's arraignment, the third judge transferred the case to Middlesex County.

In June 2014, defendant filed a motion re-raising the same issues before a judge in Middlesex County. That judge rejected defendant's reliance on In re Newman, 189 N.J. 477 (2006), in which a municipal court judge, motivated by a desire to spare the defendant from having to return to court and appear before a different judge, was disciplined for conducting an arraignment of a defendant notwithstanding the existence of an acknowledged conflict of interest. The judge explained that "while judicial supervision is necessary to ensure the independence of the grand jury . . . 'no judge presides to monitor its proceedings,'" quoting State v. Murphy, 213 N.J. Super. 404, 411 (App. Div. 1986). The judge noted that "[t]he supervisional duties of the [first judge]

include charging the grand jury, administering the oath . . . , [and] discharging the grand jury at the end of their term."

The judge in Middlesex County also rejected defendant's interpretation of Rule 1:12-3,[2] that only the Chief Justice could assign the matter to a different judge after the first judge was conflicted out. The judge found that defendant did not cite, and the court could not find any legal authority supporting defendant's claim. The judge also noted that the grand jury process was conducted "without any questions of the grand jurors that necessitated any judicial involvement whatsoever" and that defendant did not suffer any prejudice from the simple fact that the first judge empaneled the grand juries that heard defendant's cases. The judge in Middlesex County stated:

> Defendant mischaracterizes the fact by stating that [the first judge] empaneled the grand juries to hear . . . defendant's case[s]. This was not an investigatory grand jury which is empaneled for the purposes of investigating a case. It was a standard . . . grand jury empanelment to sit [eighteen] weeks . . . , [one] day a

---

[2] Rule 1:12-3(a) provides in pertinent part that

> [i]n the event of the disqualification or inability for any reason of a judge to hear any pending matter before or after trial, another judge of the court in which the matter is pending or a judge temporarily assigned to hear the matter shall be designated by the Chief Justice or by the Assignment Judge of the county where the matter is pending . . . .

A-0522-17T4

week, and to get everything from drug cases, to homicides, to bad checks, to apparently [defendant]'s matter.

. . . .

It is a simple fact that [the first judge] had no direct contact with defendant's case. And his role in swearing in a jury and using standard language and form promulgated from the conference of Assignment Judges had absolutely no prejudicial [e]ffect, nor any [e]ffect whatsoever on this defendant. And no rational person would conceive that there's even an appearance of impropriety.

Defendant filed motions for leave to appeal the order entered by the Middlesex County judge. Both this court and the New Jersey Supreme Court denied the motions.

In January 2017, defendant appeared before another judge in Middlesex County (the second Middlesex judge) on several pre-trial motions. The second Middlesex judge denied defendant's motion to dismiss the indictment "based on [a] lack of jurisdiction by the [c]ourt," and also rejected defendant's contention that the first judge's appointment of the second judge as a conflict judge violated Rule 1:12-3. Defendant filed a motion for reconsideration, which the judge denied.

A-0522-17T4

II.

"Generally, a defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea." State v. Owens, 381 N.J. Super. 503, 508 (App. Div. 2005) (quoting State v. Knight, 183 N.J. 449, 470 (2005)).  Consequently, "a guilty plea waives all issues, including constitutional claims, that were or could have been raised in prior proceedings."  Id. at 508-09 (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  In Tollett, the United States Supreme Court held,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.
>
> [411 U.S. at 267.]

However, there are exceptions to this general rule.  "[T]he guiding principle" of these exceptions was established in Menna v. New York, 423 U.S. 61, 62 (1975).  State v. Truglia, 97 N.J. 513, 523 (1984).  In Menna, the United States Supreme Court concluded that the defendant could raise a double jeopardy challenge, even though the defendant had pled guilty.  423 U.S. at 62. The Court held that a guilty plea does not waive a claim when "the charge is one

7

which the State may not constitutionally prosecute." Id. at 62 n.2. The Court noted the difference between "factual guilt," which is established by a guilty plea, and a defendant's claim that the State simply cannot prosecute because it is prohibited by the United States Constitution. Ibid.

Accordingly, double jeopardy and other "constitutional violation[s] akin thereto" are not waived by the entry of a guilty plea. State v. Garoniak, 164 N.J. Super. 344, 348 (App. Div. 1978). "Since the application of this type of constitutional protection would be to prevent a trial from taking place at all, a defendant may raise the applicable constitutional issue and obtain relief by a reason thereof, notwithstanding that his conviction was entered pursuant to a counseled plea of guilty." Ibid. However, relevant here, we have previously concluded that "challenge[s] [to] the indictment" and "the unconstitutionality of grand jury selection" are not "constitutional violation[s] akin" to double jeopardy, and thus, are waived by a guilty plea. Id. at 348-49; Owens, 381 N.J. Super. at 509.

There is no reason to conclude that defendant's claim was not waived by his entry of a guilty plea. Defendant's jurisdictional claim is not a "constitutional protection" like the Double Jeopardy Clause of the Fifth Amendment that would prevent a trial from taking place at all. Garoniak, 164

A-0522-17T4

N.J. Super. at 348. Defendant's contention is not that the State was prohibited from indicting him on these charges, but that he could not be indicted by a grand jury that was empaneled by the first judge. Yet, defendant pled guilty on this indictment. If defendant wanted to subsequently challenge the grand jury process, he should have entered a conditional guilty plea.[3] He did not do so.

Moreover, defendant's claim does not rise to a constitutional level. Defendant's argument is based on the first judge's empanelment of the grand jury and his assignment of a conflict judge. Defendant argues that because the first judge previously recused himself, he could not empanel the grand jury or assign the matter to a different judge. However, we have recognized that "[m]ost matters relating to judicial disqualification [do] not rise to a constitutional level." State v. Presley, 436 N.J. Super. 440, 458 (App. Div. 2014) (second alteration in original) (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820-21 (1986)). "Rather, issues involving a judge's qualifications to hear a case are ordinarily resolved 'by common law, statute, or the professional standards of the bench and bar.'" Ibid. (quoting Bracy v. Gramley, 520 U.S. 899, 904-05

---

[3] Pursuant to Rule 3:9-3(f), "a defendant may enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, the defendant shall be afforded the opportunity to withdraw his . . . plea."

A-0522-17T4

(1997)). Accordingly, defendant's argument regarding [the first judge's] disqualification does not rise to "a constitutional level." Ibid.

The "crux" of defendant's jurisdictional challenge is that the first judge "never should have had any involvement with a case brought against" defendant. Defendant contends that because the first judge recused himself, "[Rule] 1:12-3 require[d] the Chief Justice, not the recused assignment judge, to designate a judge to hear the matter, including communications with the prosecutor, [e]mpaneling the grand jury, voir dire of grand jurors, returning indictments[,] and corresponding with defense counsel."

Because this issue was addressed and decided in LaVergne, slip op. at 22-32, we affirm substantially for the reasons set forth therein. The panel addressed defendant's argument that Rule 1:12-3 required the first judge to relinquish jurisdiction to the Chief Justice – the same contention brought by defendant on this appeal. We stated:

> Here, defendant offers no support for his proposition that Rule 1:12-3 prohibited [the first judge] from empaneling a grand jury or assigning other judges to handle defendant's case, including the grand jury presentation. By its plain language, Rule 1:12-3(a) requires the assignment judge or the Chief Justice to designate another judge "to hear any pending matter before or after trial" if the judge hearing the matter is disqualified. Nor is there any support for defendant's proposition that where the case is ultimately transferred

to a different county after indictment, but prior to arraignment, a conflict by [the first judge] creates a jurisdictional issue mandating the dismissal of the indictment in the absence of any finding of prejudice, perceived or actual, in the grand jury presentation. On the contrary, we are satisfied that [the first judge's] ministerial and insubstantial acts "did not 'substantially undermine' the objectivity of the charging process or case harm to the defendant." [State v. Murphy, 110 N.J. 20, 35 (1988)].

[LaVergne, slip op. at 31.]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0522-17T4