243 N.J. Super. 142 (1990)
578 A.2d 1234
JERRY PALUMBO, PLAINTIFF-RESPONDENT,
v.
THE TOWNSHIP OF OLD BRIDGE, IN THE COUNTY OF MIDDLESEX; ARTHUR HANEY, INDIVIDUALLY AND AS THE MAYOR OF OLD BRIDGE; THE COUNCIL OF THE TOWNSHIP OF OLD BRIDGE; JOSEPH LEO, BUSINESS ADMINISTRATOR OF THE TOWNSHIP OF OLD BRIDGE; R. LANE MILLER; GEORGE BUSH, DEFENDANTS-APPELLANTS, AND THEODORE YOUNG AND THE COUNCIL PERSONS OF OLD BRIDGE TOWNSHIP, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1990.
Decided July 19, 1990.
*144 Before Judges PETRELLA and HAVEY.
Ronald L. Reisner argued the cause for appellants Township of Old Bridge, Mayor Arthur Haney and Business Administrator Joseph P. Leo (Tucci, Iadanza and Reisner, attorneys, Ronald L. Reisner, on the brief).
Louis E. Granata argued the cause for respondent Jerry Palumbo (Yacker & Granata, attorneys; Louis E. Granata, on the letter brief).
No brief was filed on behalf of respondent Theodore Young.
No other parties participated in this appeal.
PER CURIAM.
The Township of Old Bridge (Township) appeals from the determination of the Law Division which permanently restrained disciplinary proceedings against plaintiff Jerry Palumbo in connection with an alleged solicitation and acceptance of a gratuity (tickets to the race track) from a business in the municipality. The judge below also ordered Palumbo restored to his position as chief of police.
On its appeal the Township argues that the judge erred in concluding that the Township and the individual defendants had not timely served and filed their statement of charges as required by N.J.S.A. 40A:14-147. The Township also contends that there was error in the imposition of restraints since there is no irreparable injury. In addition, it argues that it was improper to give what defendants describe as "retroactive effect" to the amendment to N.J.S.A. 40A:14-147 by L. 1988, c. 145, which took effect on November 1, 1988.
On July 5, 1988 Palumbo allegedly accepted a block of tickets to Raceway Park in the Township of Old Bridge for the 1988 "Summer Nationals" of stock car racing. This action was viewed by some municipal officials as a possible violation of the police department rules and regulations, and possibly Township ordinances, and they referred the matter to the Middlesex *145 County Prosecutor's Office for investigation. According to Palumbo, for the last 20 years race track officials had given tickets to the mayor and council, both political parties in the municipality, and the Policemen's Benevolent Association. Apparently, the practice had previously been the subject of an investigation by defendant Joseph P. Leo, the Business Administrator of the Township, and the Middlesex County Prosecutor's Office.
The Township took no action concerning the allegations pending an investigation by the prosecutor's office. The Township attorney met with Third Assistant Prosecutor West on May 2, 1989 concerning the status of the Palumbo investigation. At that time he was told by West that the prosecutor's office would not proceed further. Nevertheless, on June 7, 1989 the Township attorney wrote a letter to Middlesex County Prosecutor Rockoff in which he expressly referred to the meeting of May 2, 1989 and the fact that he had been advised by West that the matter was not going to proceed further. The Township attorney requested that the matter be brought to the personal attention of the prosecutor and requested written confirmation because of the time limitation in N.J.S.A. 40A:14-147. Prosecutor Rockoff's letter response dated June 8, 1989 was essentially non-responsive as a confirmation. Rather, it stated:
Pursuant to our telephone conversation that resulted from receipt of your letter of June 7, 1989, please be advised that this department will await the outcome of any action that the Township of Old Bridge deems appropriate under its local Ordinances, Rules and Regulations to examine the involvement of Police Chief Jerry Palumbo and others with the Raceway Park officials who operate the drag race track in your municipality.
If the Township intends to hold hearings or investigate the activities of the aforementioned individuals and others to determine whether any violation of local laws have occurred, please retain all transcripts and provide this department with prior notice of all hearings so that we may determine whether our presence as observers is required.
Thank you for alerting me to the Township's officials' concern.
Copies of this letter were sent to Assistant Prosecutor West, Mayor Haney, Leo, and defense attorneys Miller and Savage.
*146 On July 17, 1989, over a month later, defendant Leo served Palumbo with a "preliminary notice of hearing and suspension" alleging violations of various police department rules and regulations.[1]
The preliminary notice, somewhat inconsistent with the statement of charges, set forth the basis for the charges as:
SPECIFICATIONS:
On or about July 5, 1988 you violated Rules and Regulations of the Police Department (3:1.20), (3:1.21) and (6:1.44) and terms of the ordinances of the Township of Old Bridge (3-6.1.a.2 and 3-6.4.e) in that you did solicit and accept a gratuity from a business in the municipality. Specifically, you obtained a quantity of admission tickets to the Raceway Park Summernational races for the year 1988, said tickets valued at in excess of $5,000, and failed and refused to return them when ordered to do so.
Your conduct (1) violated the ordinances of the Township and Rules of the Department, (2) constituted conduct unbecoming a police officer, and (3) constituted Insubordination.
After the notice was served on Palumbo he sought and obtained an order to show cause captioned in a then pending lawsuit in lieu of prerogative writ against the Township, its Mayor, Arthur Haney, Business Administrator Joseph P. Leo, and others which was essentially a challenge to the efforts of the Township to amend its ordinances and regulations to appoint a Director of Public Safety who would be in charge of the police department. The suit also alleged interference with the operation of the department. No new complaint was filed. The order to show cause contained temporary restraints. Subsequently, the defendants moved to dissolve the restraints. The matter was heard on the adjourned return date of the order to show cause. Technically, it was improper to bring the order to show cause for this relief in a pending prerogative writ action. Institution of a new suit should have been required, particularly *147 in view of the nature of the issues involved.[2] Moreover, in view of the pendency of the prerogative writ action and the incorporation of the order to show cause into that action, the disposition of that action was not appealable without leave. R. 2:2-4. We bypass the procedural irregularities in view of the present posture of the matter. On the return date of the order to show cause an order was entered permanently restraining the disciplinary proceeding instituted against Palumbo and restoring him to his position. A motion for reconsideration filed by defendants was denied.[3]
N.J.S.A. 40A:14-147 was amended by L. 1988, c. 145, effective November 1, 1988, to provide:[4]
Except as otherwise provided by law, no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force, nor shall such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause as hereinbefore provided and then only upon a written complaint setting forth the charge or charges against such member or officer. Said complaint shall be filed in the office of the body, officer or officers having charge of the department or force wherein the complaint is made and a copy shall be served upon the member or officer so charged, with notice of a designated hearing thereon by the proper authorities, which shall be not less than 10 nor more than 30 days from date of service of the complaint.

A complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based. The 45 day time limit shall not apply if an investigation of a law *148 enforcement officer for a violation of the internal rules or regulations of the law enforcement unit is included directly or indirectly within a concurrent investigation of that officer for a violation of the criminal laws of this State. The 45-day limit shall begin on the day after the disposition of the criminal investigation. The 45-day requirement of this paragraph for the filing of a complaint against an officer shall not apply to a filing of a complaint by a private individual.

A failure to comply with said provisions as to the service of the complaint and the time within which a complaint is to be filed shall require a dismissal of the complaint.
With respect to the timeliness of the institution of the administrative proceedings under N.J.S.A. 40A:14-147, as amended in November 1988, we initially observe that the municipal attorney was aware of and referred to the statutory time limitation in his June 7, 1989 letter to the prosecutor, notwithstanding that the claimed violations by Palumbo occurred on July 5, 1988. In any event, we find Ward v. Keenan, 3 N.J. 298, 70 A.2d 77 (1949), upon which defendants rely, inapposite since it is factually dissimilar from the matter before us, involves different legal issues, and was decided before even the enactment of N.J.S.A. 40A:14-147, irrespective of the 1988 amendment.
With respect to the claim that the amendment by L. 1988, c. 145, should only be prospective, defendants correctly point out that New Jersey has generally followed a rule that favors prospective application of statutes. See Gibbons v. Gibbons, 86 N.J. 515, 432 A.2d 80 (1981). However, that rule is not automatically applied in every case. Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974). As was pointed out in Gibbons, statutes may be applied retroactively where the Legislature has expressed a contrary intent; where the statute is ameliorative or curative; or where there is no clear expression of legislative intent that the statute is to be applied prospectively and the expectations of the parties may warrant retroactive application of the statute. Another consideration is whether retroactive application will result in "manifest injustice" to a party adversely affected by such application of the statute.
*149 Here, it is undisputed that the Township officials learned of the termination of the prosecutor's office's investigation from an assistant prosecutor on May 2, 1989, which was some six months after the amended statute was made effective. The suspension notice was not issued until July 17, 1989. We conclude that under the circumstances there was no error in applying the amendment to the facts herein and that it would not be unfair to apply the amendment to the charges filed. Nor do we find any mistaken exercise of discretion by the court in affording injunctive relief under the circumstances here presented.
However, in light of the somewhat ambivalent nature of the prosecutor's response of June 8, 1989, we are unable to discern whether there had been a "final disposition" of the referred allegations regarding possible criminal charges. Hence, a remand is required to determine if such final disposition had occurred within the meaning of N.J.S.A. 40A:14-147 to invoke the statute's time limitations, and if so, on what date.
There was, as the judge noted, no proof submitted by defendants by way of affidavits or certification from the prosecutor's office in opposition to the order to show cause. Nor was there any affidavit or certification submitted by the attorney for the Township regarding his telephone conversation with the prosecutor on June 8, 1989, as referred to in the prosecutor's letter of that date. In view of the public interest nature of this matter we deem it preferable to remand for a determination of whether any criminal investigation is or is not pending, and if not, when any investigation terminated. It would be anticipated that in the usual course if a criminal investigation is pending the parties should be entitled to be so advised. Indeed, if such a criminal investigation were pending it is hard to envision how disciplinary proceedings could proceed since the subject of such an investigation would most likely decline to testify and invoke Fifth Amendment constitutional rights, Banca v. Town of Phillipsburg, 181 N.J. Super. 109, 114-115, 436 A.2d 944 (App.Div. *150 1981). See also American Cyanamid Co. v. Sharff, 309 F.2d 790 (3d Cir.1962), and might even seek a stay of administrative proceedings pending the disposition of any such criminal investigation. See Trap Rock Industries v. Kohl, 59 N.J. 471, 488-489, 284 A.2d 161 (1971); In re Darcy, 114 N.J. Super. 454, 462, 277 A.2d 226 (App.Div. 1971).
If the investigation was actually terminated more than 45 days prior to July 17, 1989 then the statutory time bar applies. In the event the investigation was not terminated more than 45 days prior to that date then the trial court shall dissolve the restraints. If any criminal investigation is still pending the judge shall vacate the restraints, but may entertain an application to stay municipal disciplinary proceedings pending the disposition of any criminal investigation or proceedings.
Remanded for further proceedings in accordance herewith.
NOTES
[1] It alleged violations of Chapter 6:1.6H ("willful violation of rules, or regulations or other statutes relative in the employment of public employees"); subparagraph K ("conduct unbecoming an employee in the public service"); and subparagraph D ("insubordination or serious breach of discipline"). The latter charge related to a refusal to return the tickets when ordered to do so.
[2] No copy of the complaint was included in any party's appendix. See R. 2:6-1(a)(1).
[3] We note and disapprove of the excessive use of motions for reconsideration. See R. 4:49-2. Our observation is that such motions have been made with increasing frequency when essentially there is little more than disagreement with the court's decision. Motions for reconsideration were never meant to be a substitute for the filing of a timely appeal. Moreover, we have observed increased frequency of such motions in this court.
[4] The italicized portion was added by the amendment.