709 A.2d 333

CAPTAIN THOMAS E. GRILL, LIEUTENANT JAMES WALSH, PLAINTIFFS, v. CITY OF NEWARK, NEWARK POLICE DEPARTMENT, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided November 15, 1997.

---

[35] *Id.*

[36] *Id.*

*Andres Diaz, Jr.,* for plaintiff Captain Thomas E. Grill.

*Michael Critchley,* for plaintiff Lieutenant James Walsh.

*Phillip R. Dowdell,* for defendants City of Newark, Newark Police Department (*City of Newark Corporation Counsel,* attorneys).

WEISS, A.J.S.C.

Plaintiffs Captain Thomas E. Grill (Grill) and Lieutenant James Walsh (Walsh) instituted this action to overturn their removal by the defendant City of Newark Police Department and to be reinstated to their former positions with back pay and benefits retroactively to July 5, 1996, the day of their suspensions. The following facts established at trial were largely undisputed; however, the parties disagreed as to the conclusions the court should reach.

On July 5, 1996, Grill and Walsh were indicted by an Essex County Grand Jury. At the time of their indictment they were under investigation by defendant police department. That investigation had been suspended by defendant at the request of the Essex County Prosecutor. After indictment, both plaintiffs eventually entered guilty pleas and the prosecutor's office recommended that plaintiffs be admitted into PTI. On March 14, 1997, the court formally approved plaintiffs' entry into PTI.

Immediately upon becoming aware of the conclusion of the criminal proceedings against plaintiffs, defendant reinstated its investigation against plaintiffs. On March 26, 1997, Police Director Joseph Santiago (Santiago) wrote the Essex County Prosecutor's office requesting a copy of the proceedings before the Grand Jury, as well as other material in the prosecutor's possession. At the time Santiago was seeking the Grand Jury material,

counsel for plaintiffs [1] was negotiating with Santiago to have the disciplinary proceedings against plaintiffs dropped. During a conversation with counsel, Santiago requested a copy of the proceedings before the Grand Jury, which counsel proceeded to turn over to Santiago. The Grand Jury transcript was given to Sergeant Salvatore Russamano, the officer who was assigned in early April 1997 to conduct the investigation of Grill and Walsh. Sergeant Russamano used the Grand Jury transcripts in conducting his investigation. On April 24, defendant received from the prosecutor's office material from the Grand Jury investigation of Grill and Walsh, which included the declaration of Dan Belzung and statements from Walsh, Grill and Officer Marion Reynolds. This material was also made available to Sergeant Russamano who personally interviewed Officer Reynolds to confirm the accuracy of the information in Reynold's statement.

On April 28 Sergeant Russamano prepared his Investigation Report and delivered it to Sergeant Harvey Simpson. On that same day Sergeant Simpson personally prepared the Preliminary Notices of Disciplinary Action and Charges and Specifications against Grill and Walsh. He then took those documents to the Internal Affairs Bureau and stamped Deputy Chief Vincent DeFilippo's name on the Charges and Specifications. He next took the documents to Deputy Chief DeFilippo who reviewed the two sets of documents and personally signed the Preliminary Notices of Disciplinary Action. Sergeant Simpson then put copies of both documents into envelopes, addressed them to Grill and Walsh, to be sent by regular and certified mail to plaintiffs. The evidence is clear that the envelopes being sent regular mail were meter-stamped on April 30, 1997, and the documents being sent certified mail were meter-stamped May 1, 1997.

---

[1] Although there was some question at trial whether counsel represented both plaintiffs at the time he met with Santiago, even if he only represented Grill and not Walsh, this would not affect the court's decision in this matter.

On May 23, disciplinary hearings were held which resulted in plaintiffs' being removed from the police department. This law-suit followed.

In support of their positions that the court should overturn their removal, plaintiffs make three arguments: first, that the Preliminary Notices of Disciplinary Action and the Charges and Specifications were not personally signed by the appropriate authority; second, that the Preliminary Notices of Disciplinary Action and the Charges and Specifications against plaintiffs were not served within 45 days as required by *N.J.S.A.* 40A:14-147; and third, that the use of the Grand Jury material turned over to the defendant tainted the disciplinary proceedings against plaintiffs and therefore the decision of the Disciplinary Board should be voided. The court will deal with each of plaintiffs' assertions in the order set out above.

### *SIGNATURE*

Plaintiffs assert that the complaints against them were not properly filed because they were required to be personally signed by both the IAD Commander and the Police Director. In support of their position they cite "Memorandum from the Police Director, Number 96–49 INV." On March 4, 1996, the Acting Police Director sent to all commands "Memorandum Number 96–49 INV". Attached to that memorandum was a memorandum from the Assistant Corporation Counsel to the Acting Police Director entitled "Internal Investigations and 45 Day Rule Compliance". On the third page of the memorandum from the corporate counsel is a heading entitled "Obtaining Signatures."

A problem has been identified in getting the charges or preliminary notices signed. Since the charges or preliminary notices have to be signed by the IAD Commander and Police Director respectively, many times these are left on their desks to wait for a signature. As you know, the 45 day period will not be tolled for this reason.

Once a charge (or preliminary notice) is prepared, the office of the IAD Commander (or Police Director) should be called to ascertain when they will be available that day to review and sign the forms. If they will not be available for a while,

arrangements should be made to have an Acting Commander or Director review and sign the forms.

█ Plaintiffs contend that because the two Preliminary Notices of Disciplinary Action and the Charges and Specifications were not signed by the Police Director and IAD Commander, these Preliminary Notices were defective and therefore, valid complaints were not filed against plaintiffs within 45 days as required by *N.J.S.A.* 40A:14–147. The court has examined the Civil Service Act, *N.J.S.A.* 11A:1–1—11A:8–4, the regulations promulgated under that Act, *N.J.A.C.* 4A:1–1.1—4A:4–7.12, and cases decided under that Act. Nowhere has the court been able to find any requirement in the law that the Preliminary Notices had to be signed by the Police Director and IAD Commander or that two signatures are required for the filing of a complaint. The Preliminary Notice of Disciplinary Action form, DPF–31A, promulgated by the Department of Personnel, State of New Jersey, only requires the signature of the "appointing authority or authorized agent". There is no place for two signatures on that form. No explanation was presented as to why the memorandum from the Assistant Corporation Counsel stated that the Preliminary Notices and Charges and Specifications had to have two signatures. Sergeant Harvey Simpson and Deputy Chief Vincent DeFilippo, both testified that when Deputy Chief DeFilippo was commander in the Internal Affairs Bureau, the practice was for him to sign the Preliminary Notices, and he authorized Sergeant Simpson to stamp his name to the Charges and Specifications. He further testified that he would review the Charges and Specifications before he signed the Preliminary Notices and that he was departmentally authorized to sign the preliminary notices on behalf of the appointing authority. In the absence of any requirements under the statute for dual signatures, the court finds that Deputy Chief DeFilippo was an authorized agent to sign the Preliminary Notices forms and that those forms which were signed on April 28 were filed within the meaning of *N.J.S.A.* 40A:14–147. Therefore, the court concludes that there was no requirement for two signatures to the complaints filed against plaintiffs.

## 45 DAY TIME LIMIT

Plaintiffs next assert that even if the Preliminary Notices and Charges and Specifications were properly signed, they were not served upon them within 45 days as required by *N.J.S.A.* 40A:14–147. *N.J.S.A.* 40A:14–147 provides in pertinent part:

... no officer of the police department ... shall be removed from his office ... for any cause other than ... misconduct, or disobedience of rules and regulation established for the government of the police department enforced ..., ... and then only upon a written complaint setting forth the charge or charges against such ... officer. Said complaint shall be filed in the office of the body, officer or officers having charge of the department or force wherein the complaint is made and a copy shall be served upon the ... officer so charged, ...

A complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the 45th day after the date on which the person filing the complaint obtains sufficient information to file the matter upon which the complaint is based. The 45–day time limit shall not apply if an investigation of a law enforcement officer for a violation of the internal rules or regulations of the law enforcement unit is tied directly or indirectly within a concurrent investigation of that officer for a violation of the criminal laws of this state. The 45–day limit shall began on the day after the disposition of the criminal investigation....

A failure to comply with said provisions as to the service of the complaint and the time within which a complaint is to be filed shall require dismissal of the complaint.

Plaintiffs were admitted into PTI on March 14, 1995. It is clear from the evidence that on March 15, 1997, defendant was notified that plaintiffs had been admitted into PTI. The letter notification from the Prosecutor's Office was dated March 17, 1997, and was stamped in as received by the defendants on March 25, 1997. If the 45–day period for the filing of the complaints against plaintiffs began on March 15, 1997, the day after plaintiffs were admitted into PTI, then the final date for filing of the complaints was April 28, 1997. The uncontradicted evidence in this case is that the Preliminary Notices of Disciplinary Action and the Charges and Specifications were dated April 28, 1997, that the Charges and Specifications were signed by the stamp signature of Deputy Chief Vincent DeFilippo on and the Preliminary Notices of Disciplinary Action were personally signed by him on that date. The evidence is further uncontradicted that the regular mail envelopes in which the Preliminary Notices of Disciplinary

Action and Charges and Specifications were placed were meter stamped April 30, 1997 and the certified envelopes were meter stamped May 1, 1997. It is plaintiffs contention that the failure to serve upon them the Preliminary Notices of Disciplinary Action and the Charges and Specifications on April 28, 1997 fails to meet the 45–day requirement of *N.J.S.A.* 40A:14–147 and, therefore, the charges against plaintiffs must be dismissed.

■ Construction of any statute begins with consideration of its plain language. *Merin v. Maglaki*, 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). A statute should be interpreted in accordance with its plain meaning if it is clear and unambiguous on its face. *Bd. of Ed. Of Tp. Neptune v. Neptune Tp. Ed.*, 144 *N.J.* 16, 25, 675 *A.*2d 611 (1996). A reading of *N.J.S.A.* 40A:14–147 makes it clear that the 45–day requirement to remove or suspend police officers applies only to the filing of the complaint against the police officers. The statute itself speaks of "said complaint shall be filed", as differentiated from "a copy [of the complaint] shall be served upon the officer or member so charged." Clearly the Legislature distinguished between the filing of the complaint and the service of the complaint and only required that the

> complaint ... shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based ... The 45–day limit shall begin on the day after disposition of the criminal investigation. The 45–day requirement of this paragraph for the filing of the complaint against an officer shall not apply to a filing of a complaint by a private individual.

> A failure to comply with said provisions as to the service of the complaint and the time within which a complaint is to be filed shall require a dismissal of the complaint.

> [*N.J.S.A.* 40A:14–147]

■ The requirement for the filing of the complaint under *N.J.S.A.* 40A:14–147 is analogous to the running of the statute of limitations. In civil actions the statute of limitations is satisfied by the filing of the complaint with the court, even though service of the summons and complaint takes place after the running of the statute. *N.J.S.A.* 2A:14–1—2A:14–34; *R.* 4:2–2; *Grubb v. J.C. Penney Co., Inc.*, 155 *N.J.Super.* 103, 382 *A.*2d 405 (App.Div.1978).

In criminal cases the statute of limitations is satisfied when a warrant or other process is issued for a nonindictable offense or the handing down of the indictment. *N.J.S.A.* 2C:1–6d. In this case the Preliminary Notices of Disciplinary Action and Charges and Specifications were filed on April 28, 1997 in compliance with the 45–day requirement of the statute. Therefore, the court rejects plaintiffs claim that *N.J.S.A.* 40A:14–147 was not satisfied in this case.

## USE OF GRAND JURY MATERIAL

■ Plaintiffs final argument is that the use of the Grand Jury minutes and documents which initially had been turned over to defendant by plaintiffs' counsel on March 25, 1997, and then by the Prosecutor's Office on or about April 22, 1997, violated the secrecy of the Grand Jury proceedings. *R.* 3:6–7 requires that all Grand Jury proceedings shall remain secret. Pursuant to *R.* 3:6–6(b), after an indictment has been returned a transcript of the Grand Jury proceedings designated by a defendant is to be made available to the defendant, subject to the prosecutor moving for a protective order. Subject to the aforementioned exception in the Rules, Grand Jury proceedings may only be disclosed by order of the court. *State v. Doliner,* 96 *N.J.* 236, 246, 475 *A.*2d 552 (1984).

*State v. Doliner, supra,* held that disclosure to government attorneys, other than prosecutors, of Grand Jury material was subject to prior court approval. The standard adopted by the Court was "a strong show of particularized need that outweighs the interest in Grand Jury secrecy." The *Doliner* Court quoted from *United States v. Procter and Gamble Co.,* 356 *U.S.* 677, 78 *S.Ct.* 983, 2 *L.Ed.*2d 1077 (1958) where the United States Supreme Court set out the reason for Grand Jury secrecy as follows:

1. To prevent the escape of those whose indictments may be contemplated;

2. To insure the utmost freedom to the Grand Jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the Grand jurors;

3. To prevent subornation of perjury or tampering with witnesses who may testify before the Grand Jury and later appear at the trial of those indicted by it;

4. To encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;

5. To protect innocent accused who is exonerated from the disclosure of the fact that he has been under investigation, and from the expenses of standing trial where there is no probability of guilt. 96 *N.J.* at 247, 475 *A.*2d 552.

The Court then went on to say:

> It may be seen at once that the reason for secrecy are primarily related to the work of an ongoing grand jury investigation, not the work of a grand jury that has concluded its deliberations and returned either an indictment or a no bill. When either of those events occurs, the first three factors will almost invariably disappear.

[*id.* at 247, 475 *A.*2d 552]

In dealing with the fourth factor, our Supreme Court concluded that since each witness was on notice that his or her testimony would be disclosed to defendants who are indicted upon request, the fourth factor did not appear to be a strong factor for secrecy in New Jersey. The fifth factor, protecting innocent persons, would also not be implicated where an indictment has been returned against a defendant. The Court then went on to discuss the relevant factors that courts should utilize in weighing whether to release Grand Jury testimony for use by other agencies.

> ... We agree with the State's articulation that the Court's determination should turn upon objective criteria such as: (1) the stated purpose of the Grand Jury investigations; (2) whether an indictment was returned; (3) the degree of civil agency involvement in the Grand Jury investigations; (4) whether the agency is seeking access to evidence which it would not be entitled under its own investigative powers; (5) whether the Grand Jury investigation was instituted at the behest of the agency.

[96 *N.J.* at 250, 475 *A.*2d 552].

Had an application been made to this court for the release of the Grand Jury material to the defendant Newark Police Department in order for it to complete its investigation within the 45–day limit of *N.J.S.A.* 40A:14–147, the court has no doubt that

such application would have been granted. In the present case, although no such court order was obtained for the release of the Grand Jury material, on March 25, 1996, counsel for plaintiffs turned over the Grand Jury transcript to Police Director Santiago in an effort to persuade him from filing disciplinary charges against Grill and Walsh. One month later the Prosecutor's Office also forwarded Grand Jury material to the Police Director, again without a court order. Once the Police Director had the Grand Jury material, this court finds no policy reason for prohibiting the use of that material. Once a defendant obtains the Grand Jury testimony pursuant to *R.* 3:6–6(b), at least as to that defendant the reasons for secrecy are set forth in *Doliner* no longer apply.[2]

A search of cases in other jurisdictions has disclosed only two cases which have dealt with the question of use of Grand Jury material for which no court order permitting disclosure had been obtained. In *Reichert v. C.I.R.,* 214 *F.*2d 19 (7th Cir.1954), *cert. denied* 348 *U.S.* 909, 75 *S.Ct.* 294, 99 *L.Ed.* 713 (1955), the taxpayer moved to suppress the evidence against him in a proceeding by the I.R.S. to collect unpaid income taxes and to impose fraud penalties against the taxpayer. The basis for the case against the taxpayer was Grand Jury material supplied to the I.R.S. by the prosecuting attorney from Vanderburgh County, Indiana. No court order had been obtained for the release of the Grand Jury material. The Seventh Circuit, in upholding the denial of the taxpayer's motion to suppress, held that "the provisions for secrecy of the Grand Jury were not for the benefit of taxpayer..." *Id.* at 23.

In *Temple University v. Salla Bros., Inc.,* 656 *F.Supp.* 97 (E.D.Pa.1986) Temple University brought an action against the defendants alleging RICO violations, fraud, conspiracy and other charges. Defendants moved to enjoin the use of Grand Jury

---

[2] Since the Grand Jury transcripts were originally turned over to defendant by plaintiffs' counsel, the court could rationalize its conclusion by invoking the doctrine of waiver or "invited error", but this might dilute the underlying basis of the court's decision.

testimony in plaintiff's possession. The government had turned over the Grand Jury testimony to the defendants in a criminal matter entitled *U.S. v. Nardini.* Counsel for one of the defendants in the Nardini case assisted the plaintiff in its investigation and turned over to the plaintiff the Grand Jury testimony. After the Nardini defendants were sentenced in the criminal matter, an FBI agent turned over to plaintiff copies of certain payment records of one of the defendants which had been reviewed by the Grand Jury. Defendants argued that the possession and use of the Grand Jury testimony and exhibits constituted a violation of *Fed.R.Crim.P.* 6(e), the general rule for secrecy of Grand Jury proceedings. The court denied defendants' motions holding that plaintiff's possession and use of the Grand Jury testimony and payment records were not improper. [*id.* at 109].

Although factually distinguishable, two other cases are worth mentioning. In *L.T.V. Edu. Systems, Inc. v. Bell,* 862 *F.*2d 1168 (5th Cir.1989) an action was brought against the Department of Education for failure to make payments on defaulted federally insured student loans. The Department counterclaimed to recoup money based on the plaintiff's violations of regulations promulgated by the Department. Plaintiff challenged the right of the Department to use evidence obtained from an earlier Grand Jury proceedings in support of the counterclaim. The District Court denied plaintiff's motion to suppress the Grand Jury evidence and on appeal was affirmed by the Fifth Circuit. Plaintiff maintained that the disclosure order and the District Court's ruling on the suppression motion violated the standards established in *United States v. Sells Engineering, Inc.,* 463 *U.S.* 418, 103 *S.Ct.* 3133, 77 *L.Ed.*2d 743 (1983). The Fifth Circuit held that even if Cells applied retroactively, the District Court ruled properly in denying the suppression motion.

*In re Report of the Grand Jury,* 533 *So.*2d 873 (Fla.App. 1 Dist.1988) persons who were being investigated by a Grand Jury moved to suppress the Grand Jury report on the grounds that the Grand Jury was presented with a report of an earlier Grand Jury,

which report by that earlier Grand Jury was sealed and directed to be kept confidential by court order. The appellate court, in reversing the decision of the trial court to suppress the second Grand Jury report, held that

> Suppression of grand jury materials or dismissals of the indictment are available remedies for unlawful disclosure or other prosecutorial misconduct in extreme circumstances, but absent evidence of actual prejudice to the complainant or that such prosecutorial misconduct significantly infringed on the grand jury's ability to exercise its independent judgement, such extreme remedies are not warranted, since a contempt citation or other attorney discipline will serve the purpose of curtailing such conduct.

*[Id.* at 875]

Where a violation of Grand Jury secrecy has occurred, the appropriate remedy is either prosecution under *N.J.S.A.* 2B:21–10 (which makes unlawful disclosure of Grand Jury proceedings a fourth degree crime) or the institution of contempt proceedings. In the absence of a violation of a person's constitutional rights, once Grand Jury material has been disseminated to third parties who themselves are not subject to any court order not to disclose, the use or consideration of that material in a legal action does not require that such legal action be voided. This is particularly true where, as here, the parties seeking to declare the legal action void because it was "tainted" by the use of secret Grand Jury material are the very parties who first disclosed that Grand Jury material.

Judgment will be entered in favor of defendant.