751 A.2d 1119 (2000)
331 N.J. Super. 398
Bryan GRUBB, Plaintiff,
v.
BOROUGH OF HIGHTSTOWN a municipal corporation of the State of New Jersey located in Mercer County, New Jersey, and The Chief of Police of the Borough of Hightstown, Kevin Hopkins, Defendants.
Superior Court of New Jersey, Law Division, Mercer County.
Decided February 23, 2000.
*1121 Francis J. Hartman, Mount Holly, for plaintiff (Attorneys Hartman, Chartered, attorneys; Deirdre K. Hartman, on the brief).
Carleen M. Steward, Princeton, for defendant Borough of Hightstown (Mason, Griffin & Pierson, attorneys; Edmond M. Konin, of counsel; Ms. Steward and Georgia M. Fraser, on the brief).
Steven P. Goodell, Princeton, for defendant-intervenor, Chief of Police, Kevin Hopkins (Herbert, Van Ness, Cayci & Goodell, attorneys; Mr. Goodell, on the brief).
*1120 FEINBERG, A.J.S.C.

I.

PROCEDURAL HISTORY AND STATEMENT OF FACTS
The plaintiff, Bryan Grubb, was employed as a police officer with the Borough of Hightstown at the time of his arrest by the Middlesex County Prosecutor's Office for the purchase and/or sale of anabolic steroids, on March 28, 1995. On or about October 10, 1995 a grand jury in Middlesex County returned an indictment for possession of a controlled dangerous substance, conspiracy to possess a controlled dangerous substance and official misconduct against the plaintiff. Subsequent thereto, the plaintiff was suspended by the Hightstown Borough Police Department pending disposition of the outstanding criminal charges. On May 8, 1997, following a trial by jury, the plaintiff was found guilty of all charges. On or about May 9, 1997, the *1122 day after the conviction, the Hightstown Borough Council passed a resolution terminating plaintiff's employment with the Borough consistent with N.J.S.A. 2C:51-2, which requires forfeiture of public office upon conviction of a crime. The plaintiff was sentenced on June 9, 1997 to a custodial term of five years. Thereafter, the plaintiff filed an emergent application for bail pending appeal which was granted on July 14, 1997. The record reflects that the Chief of Police, Kevin Hopkins, drafted a set of preliminary administrative charges on or about May 29, 1997. It is undisputed that the preliminary charges were never signed by Chief Hopkins, filed with the Borough or served upon the plaintiff. According to Chief Hopkins, upon receiving information that the plaintiff intended to appeal his conviction, he elected to delay filing the charges until the disposition of the appeal. On July 25, 1997, the plaintiff filed an appeal with the Superior Court of New Jersey, Appellate Division seeking to overturn his conviction. On March 19, 1999, the Appellate Division vacated the judgment of conviction and entered a judgment of acquittal.
The State filed a timely petition for certification seeking to reinstate the judgment of conviction. The petition for certification was denied by the Supreme Court on July 6, 1999. On August 17, 1999, counsel for the plaintiff forwarded a letter to the Chief of Police seeking reinstatement of his client to the police department. The following day, August 19, 1999, the defendant, Borough of Hightstown, filed disciplinary charges against the plaintiff. The disciplinary charges were filed 44 days from the date the petition for certification was denied by the Court. A disciplinary hearing commenced on September 21, 1999 and continued on September 22, 1999. At the commencement of the hearing, counsel for the plaintiff moved for a dismissal of the charges based on the failure of the defendants to timely file the charges as required by N.J.S.A. 40A:14-147. With the agreement of counsel, the hearing on September 21, 1999 was limited to whether or not the disciplinary charges were filed in a timely manner. The only witness to testify was the Chief of Police, Kevin Hopkins.
On September 30, 1999, the Borough denied the plaintiff's motion to dismiss the disciplinary charges and ordered the continuation of the disciplinary hearings. The record reflects that the parties agreed to stay the continuation of the disciplinary proceedings pending the filing of an appeal by way of a complaint in lieu of prerogative writ by counsel for the plaintiff. A complaint in lieu of prerogative writ was filed by the plaintiff, Bryan Grubb, against the Borough of Hightstown in the Superior Court of New Jersey, Mercer County on October 28, 1999 seeking a review of the Borough's decision. The Chief of Police, Kevin Hopkins, filed a notice of motion to intervene and an answer to the complaint on November 10, 1999. The answer requests that the court affirm the decision of the Hightstown Borough Council. The Borough of Hightstown filed an answer on November 19, 1999. The answer seeks affirmance of the denial of plaintiff's motion to dismiss the charges and for the commencement of a disciplinary hearing pursuant to those charges.
On December 3, 1999 the court entered an order granting the Chief of Police, Kevin Hopkins, the right to intervene in the matter. On December 15, 1999 the court conducted a case management conference in the presence of counsel for all of the parties. On January 4, 2000, the court signed an order establishing a briefing schedule and listing the date of oral argument.

II.

WHETHER THE ADMINISTRATIVE CHARGES WERE FILED IN A TIMELY MANNER
The filing of disciplinary complaints against permanent members of a police *1123 department is governed by statute. More specifically, N.J.S.A. 40A:14-147, entitled "suspension and removal of members and officers: complaints; limitations on filing; and notice of hearing," states in pertinent part that:
A complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based. The 45-day limit shall not apply if an investigation of a law enforcement officer for a violation of the internal rules or regulations of the law enforcement unit is included directly or indirectly within a concurrent investigation of that officer for a violation of the criminal laws of this State. The 45-day limit shall begin on the day after the disposition of the criminal investigation. The 45-day requirement of this paragraph for the filing of a complaint against an officer shall not apply to a filing of a complaint by a private individual.
The statute provides a simple and uncomplicated procedural mechanism for the handling of administrative charges against a police officer. Pursuant to this statute, an administrative charge against a police officer must be filed 45 days after the date on which the department obtains "sufficient information" to file the complaint. The 45-day time limit is subject to an exception, however, where there is a concurrent investigation of the officer for a violation of the criminal laws of the state. When there is a criminal investigation, the 45-day limit begins on the day after the disposition of the criminal investigation. Ibid.
The plaintiff submits that there is absolutely no evidence to support the proposition that the Borough of Hightstown, at any time relevant hereto, was engaged in a concurrent investigation as defined by statute, regulation or case law. Therefore, plaintiff submits that N.J.S.A. 40A:14-147 required the Borough to file the charges "no later than the 45th day on which the person filing the complaint obtained sufficient information to file the matter upon the complaint is based." According to the plaintiff, the police department, specifically Chief Hopkins, had sufficient information on March 28, 1997, the day the plaintiff was arrested by members of the Middlesex County Prosecutor's Office. Therefore, the plaintiff submits that the Borough had an obligation to file the charges within 45 days of that date, and that the failure to do so requires a dismissal of all disciplinary charges.
The Borough of Hightstown and the Chief of Police, Kevin Hopkins, contend that the conduct and action by the Borough and the Chief of Police demonstrate that the Borough engaged in a concurrent investigation, in the form of administrative action against the plaintiff, concurrent to the criminal prosecution conducted by the Middlesex County Prosecutor's Office. To support this proposition, the defendants note that the Chief of Police was notified upon the plaintiff's arrest that a member of the Borough Police Department was assigned to accompany the Prosecutor's office and act as an observer when law enforcement conducted a search of plaintiff's residence; the Chief suspended the plaintiff from active duty; the Chief testified at the plaintiff's trial; and the plaintiff was terminated by the Borough Council when the jury returned its guilty verdict.
The construction of any statute begins with a consideration of its plain language. Board of Educ. of Neptune Tp. v. Neptune Tp. Educ. Ass'n, 144 N.J. 16, 25, 675 A.2d 611 (1996) (citing Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992)); State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132 (1993). A statute should be given its plain meaning if it is "`clear and unambiguous on its face and admits of only one interpretation.'" Board of Educ. of Neptune, supra, 144 N.J. at 25, 675 A.2d 611 (quoting State v. Butler, 89 N.J. 220, *1124 226, 445 A.2d 399 (1982)). Ultimately, the courts seek an interpretation that will "`make the most consistent whole of the statute.'" Sutton, 132 N.J. at 479, 625 A.2d 1132 (quoting State v. A.N.J., 98 N.J. 421, 424, 487 A.2d 324 (1985)). The primary task for the court is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980). The court fulfills its role by construing a statute in a fashion consistent with the statutory context in which it appears. Waterfront Comm'n of New York Harbor v. Mercedes-Benz of North America, 99 N.J. 402, 493 A.2d 504 (1985).
The policy inherent in N.J.S.A. 40A:14-147, to prevent an internal investigation and a criminal investigation from proceeding at the same time, is evident in Shusted v. Traenkner, 155 N.J.Super. 23, 382 A.2d 88 (Law Div.1977). Although Shusted was decided prior to the 1988 amendment to the statute related to the exception to the 45-day rule, the case stands for the proposition that the legislative intent behind the statute, as a whole, was to prevent the removal of an officer from his position without the benefit of a jury trial. The court held that the specific legislative intent and purpose of N.J.S.A. 40A:14-147 is circumvented and vitiated in a case where an officer is first indicted for alleged crimes and thereafter subjected to an action for his removal prior to his trial on the indictment. Id. at 30, 382 A.2d 88.
N.J.S.A. 40A:14-147 requires a reasonable outcome. If there is a pending criminal prosecution or investigation of a police officer, the statute tolls the time in which the governing body must initiate administrative charges against that officer. By doing so, the statute permits the completion of the criminal prosecution, including grand jury and all appeals, before the governing body is required to initiate and file administrative charges. In Palumbo v. Township of Old Bridge, 243 N.J.Super. 142, 149-50, 578 A.2d 1234 (App.Div.1990), the court noted the futility of proceeding with administrative charges while a criminal investigation is pending:
Indeed, if such a criminal investigation were pending it is hard to envision how disciplinary proceedings could proceed since the subject of such an investigation would most likely decline to testify and invoke Fifth Amendment constitutional rights,[citations omitted] ... and might even seek a stay of administrative proceedings pending disposition of any such criminal investigation.
[Id. at 149-50, 578 A.2d 1234 (citations omitted).]
In Palumbo the Township took no action concerning allegations of possible violations of police department rules and regulations, and possibly ordinances pending an investigation by the prosecutor's office. In fact, the alleged wrongdoing took place on July 5, 1988 and the Township attorney did not meet with any representatives from the prosecutor's office until May 2, 1989. On May 2, 1988 the Township Attorney met with an Assistant Prosecutor concerning the status of the Palumbo investigation. At that time, the Township Attorney was advised that the Prosecutor's office would not proceed further. Nevertheless, on June 7, 1989 the Township Attorney wrote a letter to Middlesex County Prosecutor Rockoff requesting written confirmation because of the time limitation set forth in N.J.S.A. 40A:14-147. It is undisputed that Prosecutor Rockoff's letter response dated June 8, 1989 was essentially non-responsive as a confirmation. Rather, it stated:
[P]lease be advised that the department will await the outcome of any action that the Township of Old Bridge deems appropriate under its local Ordinances, Rules and Regulations to examine the involvement of Police Chief Jerry Palumbo and others ....
If the Township intends to hold hearing or investigate the activities of the aforementioned individuals and others to determine whether any violation of local *1125 laws have occurred, please retain all transcripts and provide this department with prior notice of all hearings so that we may determine whether our presence as observers is required.
[Id. at 145, 578 A.2d 1234.]
The disciplinary charges were filed and served on July 17, 1989.
In Palumbo the court addressed whether or not the disciplinary charges had been timely filed. The court held that "in light of the somewhat ambivalent nature of the prosecutor's response of June 8, 1989, we are unable to discern whether there had been a `final disposition' of the referred allegations regarding possible criminal charges." Id. at 149, 578 A.2d 1234. Therefore, the court remanded the matter to determine if such final disposition had occurred within the meaning of N.J.S.A. 40A:14-147 to invoke the statute's time limitations, and if so, on what date. The court held the remand should include a determination as to whether any criminal investigation is or is not pending, and if not, when any investigation terminated. Importantly, the court held "if such a criminal investigation were pending it is hard to envision how the disciplinary proceedings could proceed since the subject of such an investigation would most likely decline to testify and invoke Fifth Amendment constitutional rights ...." Ibid. (citations omitted).
The pivotal issue in all of the cases that address the time restraints set forth in N.J.S.A. 40A:14-147 is, what is meant by "disposition of the criminal investigation." The answer to this question is best approached by a careful and thoughtful review of the legislative history. Interestingly, the legislative history provides a simple and straightforward response. According to the legislative history, the criminal investigation is complete when the appeal process is concluded. Parts of the Committee's comments are relevant:
It is the Committee's understanding that the sponsor's intended interpretation of the phrase "disposition of the criminal investigation" includes grand jury action, court trial and all appeals taken thereto.
[Assembly Law, Public Safety and Corrections Committee Statement to Assembly, No. 2630-L.1998, c. 145, reprinted in N.J.S.A. 40A:14-147.]
What emerges from this commentary is the clear intent of the drafters of the statute to include grand jury action, court trial, and all appeals taken thereto. The legislative history and the comments leave no room for any other interpretation. By suspending and terminating the plaintiff, in this case, the governing body took appropriate administrative action during the pendency of the criminal investigation. Under these circumstances, the statute allows the governing body to defer the filing of administrative charges until 45 days after the disposition of the criminal investigation. In the case at bar, for the reasons set forth infra, the disposition of the criminal investigation includes the denial of the petition for certification.
The notion of deferring departmental disciplinary charges pending review by the Prosecutor's Office is considered a prudent decision by a local law enforcement agency. In Sabia v. City of Elizabeth, 132 N.J.Super. 6, 331 A.2d 620 (App.Div.1974), certif. denied, 67 N.J. 97, 335 A.2d 50 (1975), the City deferred the filing of departmental disciplinary charges pending review by the Prosecutor of Union County. In Sabia, the alleged unlawful entry and theft took place on June 27, 1970. The police department conducted an immediate investigation which was all but completed in late August or early September, 1970. The matter was then referred for action by the City police officials to the Prosecutor of Union County and pending "disciplinary proceedings quite properly were deferred." Id. at 13, 331 A.2d 620. The record reflects that the matter rested without action by the Prosecutor for approximately fourteen months, until December 7, *1126 1971, when the Prosecutor wrote the police chief as follows:
Thank you for bringing this matter to our attention by your letter of November 29, 1971. In view of the fact situation I concur with your recommendation for departmental disciplinary proceedings in this matter. Criminal complaints do not seem in order unless a stronger case could be demonstrated but the situation is upsetting and should be permanently rectified insofar as these officers may be concerned, assuming the facts to be as indicated.
[Id. at 14, 331 A.2d 620.]
The policy to defer departmental disciplinary charges pending disposition of the criminal investigation is reasonable and, most importantly, ultimately provides the greatest protection to the member of the law enforcement agency. In Sabia, the departmental charges were filed on May 3, 1972. The court held that the mere delay in the filing of charges, without more, was insufficient to justify the conclusion that there had been an intrusion into the due process rights of the employee. Importantly, the court held that "[w]here the conduct of a public employee which forms the basis of disciplinary charges may also constitute a violation of the criminal law, however, the absence of a conviction, whether by reason of nonprosecution or even acquittal, bars neither prosecution nor finding of guilt for misconduct in office in the disciplinary proceedings." Id. at 12, 331 A.2d 620 (citations omitted).
In this case, the plaintiff contends that the 45-day exception applies only when the department initiates a formal and active investigation, and that the departmental investigation mirrors, in most respects, the actions taken as part of the formal criminal investigation. This position is neither reasonable nor beneficial to the interests of the officer. The 45-day exception should not be interpreted so narrowly as to only apply to situations where there are two existing investigations. Such a strained reading impairs the legislative intent behind the exception.
The legislative history and statutory objective to avoid the duplication of proceedings supports the notion that the word "concurrent" does not require that the investigations or action by the governmental agency be done simultaneously. As noted in Palumbo, supra, it is not necessary that the two investigations occur simultaneously; rather, the exception applies where the investigations would take place at the same time, if initiated. The word "concurrent" is defined as " [c]ooperating, accompanying, cojoined, associated, concomitant, joint and equal, existing together, and operating on the same subject." Black's Law Dictionary 291 (6th ed.1990). The term "concurrent jurisdiction" is defined as "the jurisdiction of several different tribunals, each authorized to deal with the same subject-matter, person or thing at the at the choice of the suitor." Ibid.
The holding in Grill v. City of Newark, 311 N.J.Super. 149, 709 A.2d 333 (Law Div.1997), although addressing a different issue, sheds light on the term "concurrent investigation." In Grill, the officers were indicted by an Essex County Grand Jury on July 5, 1996. At the time of their indictment they were under investigation by the defendant police department. That investigation had been suspended by defendant at the request of the Prosecutor. After indictment, both plaintiffs eventually entered guilty pleas and the prosecutor's office recommended that plaintiffs be admitted into PTI. On March 14, 1997, the court formally approved plaintiffs' entry into PTI. Immediately upon becoming aware of the conclusion of the criminal proceedings against the officers, the defendant reinstated its investigation against the officers. Id. at 152, 709 A.2d 333.
It is undisputed that the department requested a copy of the proceedings before the Grand Jury, as well as other material in the prosecutor's possession. On April 28, 1997 disciplinary charges were prepared *1127 and forwarded by regular and certified mail to the officers. For the most part, Grill addresses the propriety of the release of Grand Jury materials to the department absent a court order. However, Grill is instructive based on the court's specific finding regarding the exception to the 45-day rule. The record reflects that the department was notified of the plaintiffs' enrollment into PTI on March 15, 1997. The court held that "[i]f the 45-day period for the filing of the complaints against plaintiffs began on March 17, 1997, the day after plaintiffs were admitted into PTI, then the final date for filing of the complaints was April 28, 1997." Id. at 156, 709 A.2d 333. The uncontradicted evidence in the case demonstrated that the Preliminary Notices of Disciplinary Action and the Charges and Specifications were dated April 28, 1997. The court rejected any and all arguments based on an alleged violation of N.J.S.A. 40A:14-147. The case supports that proposition that the 45-day exception applies when two investigations are ongoing despite the absence of an formal, active or independent investigation by the local law enforcement agency.
As a matter of public policy, it behooves a local law enforcement to await the final disposition of all criminal charges pending the filing of disciplinary charges. At that point, the department has available a complete record of the criminal charges and related investigations and the benefit of any ruling by an Appellate Court. Additionally, while the criminal matter is ongoing the due process rights and privileges of the officer are protected. To compel the authorities to file disciplinary charges and/or proceed with hearings is contrary to the rights afforded to other citizens. Importantly, the disposition of the criminal charges may have a bearing on the disciplinary charges and the review by the appropriate governing body. N.J.S.A. 40A:14-149.2, in pertinent part, provides:
If a suspended police officer is found not guilty at trial, the charges are dismissed or the prosecution is terminated, said officer shall be reinstated to his position and shall be entitled to recover all pay withheld during the period of suspension subject to any disciplinary proceedings or administrative action.
This provision recognizes the procedural and due process protections afforded to an officer by deferring the filing of disciplinary charges pending the final disposition of the pending criminal charges.
Lastly, the plaintiff submits that the Chief of Police failed to comply with its own rules and regulations regarding the filing of disciplinary charges. Specifically, Rule 8:4.15 states:
A formal charge must be filed against a member within a reasonable time after which the existence of the alleged or suspected misconduct is made known, or should have been made known, to the department of Police.
[Brief for Plaintiff, Exhibit B: Department Rules and Regulations; 8.2 Department Disciplinary Hearings.]
In the case at bar, the definition of "reasonable" must be consistent and compatible with the statute governing the suspension and removal of members and officers of local law enforcement agencies. Compliance with the time requirements set forth in N.J.S.A. 40A:14-147 satisfies the reasonable standard requirement set forth by the local authorities. Additionally, this court finds that the statutory provisions set forth in N.J.S.A. 40A:14-147, and not the internal rules and regulations of the department, govern the time periods applicable to the facts set forth herein.

III.

WHETHER A PETITION FOR CERTIFICATION CONSTITUTES AN APPEAL
Plaintiff submits that a petition for certification is not an "appeal" and therefore the Borough erred when it filed charges within 45 days of the denial of certification. This argument is without merit. An appeal is defined as the "[r]esort *1128 to a superior (i.e. appellate) court to review the decision of an inferior (i.e. trial) court or administrative agency. A complaint to a higher tribunal of an error or injustice committed by a lower tribunal, in which the error or injustice is sought to be corrected or reversed." Black's Law Dictionary 96 (6th ed.1990). There can be no question but that a petition for certification is an "appeal" for purposes of the statute.
Part Two of the Rules Governing the Courts of New Jersey is entitled "Rules Governing Appellate Practice in the Supreme Court and the Appellate Division of the Superior Court." Rule 2:2-1, entitled "Appeals to the Supreme Court from Final Judgments," provides for two types of appeals to the Supreme Court from final judgments: appeals as of right and appeals on certification. Both avenues of appeal, in pertinent part, begin by stating "[a]ppeals may be taken to the Supreme Court." Additionally, R. 2:2-2, entitled "Appeals to the Supreme Court from Interlocutory Orders," in pertinent part, provides that appeals may be taken to the Supreme Court by its leave from interlocutory orders. The comments to the rule distinguish between judgments, which are the final dispositions eligible for review and every other decision, however denominated, which is interlocutory in effect.
The Rules Governing Appellate Practice repeatedly refer to appeals to the Supreme Court. Two are worth noting. Rule 2:12-1 entitled "Certification on Motion of the Supreme Court," provides that the Supreme Court may on its own motion certify any action or class actions for appeal, and R. 2:12-4 entitled "Grounds for Certification," importantly states that "[c]ertification will be granted only if the appeal presents a question of general public importance...." As noted in the comments, "[t]he emphasis is simply that the peculiar circumstances of each case will determine whether or not certification will be granted." Pressler, Current N.J. Court Rules, comment 1 on R. 2:12-4.
Counsel for the plaintiff argued before the Hightstown Borough Council that there is a difference between an appeal and a certification or writ of certiorari to the Supreme Court and that, therefore, certification is not considered part of the appeals process. This argument is without merit. A writ of certiorari is defined "as an appellate proceeding for re-examination of action of an inferior tribunal or as an auxiliary process to enable an appellate court to obtain further information in a pending cause." Black's Law Dictionary 1609 (6th ed.1990).
As noted heretofore, the Assembly Committee's comment provides that "[i]t is the Committee's understanding that the sponsor's intended interpretation of the phrase `disposition of the criminal investigation' includes grand jury action, court trial and all appeals taken thereto." N.J.S.A. 40A:14-147. In the case at bar, the State filed a timely petition for certification to the Supreme Court. That application constituted an appeal and, more importantly, provided an opportunity for further review. The Supreme Court, exercising its broad discretion, denied the petition for certification. The denial of the petition for certification, the last appeal permitted by the Rules of Court, constituted the disposition of the criminal investigation.

IV.

CONCLUSION
The Chief of Police, Kevin Hopkins, did exactly what a prudent and responsible supervisor should do: he suspended an officer upon his arrest for an indictable offense; terminated the officer upon his conviction for multiple serious offenses; and filed departmental disciplinary charges against the officer when all available avenues of appeal had been exhausted and he had access to and the opportunity to review the entire criminal file. The actions and conduct of the Chief of Police were procedurally appropriate *1129 and sufficient to bring the complaints before the Borough Council. Additionally, the disciplinary charges were filed in a timely manner and consistent with N.J.S.A. 40A:14-147. For the reasons set forth herein, the plaintiff's motion to dismiss is denied. The matter is remanded to the Borough of Hightstown for the continuation of the disciplinary hearings. This court does not retain jurisdiction.