NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
 P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 943-4761
TeleFax:  (609) 984-0805
taxcourttrenton2@judiciary.state.nj.us

August 22, 2017

John L. Berger, Esq.
Kenneth J. Slutsky, Esq.
Lowenstein Sandler, L.L.P.
One Lowenstein Drive
Roseland, New Jersey 07068

Ramanjit K. Chawla
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, New Jersey 08625-0106

> Re:    Andrew J. Shechtel v. Director, Div. of Taxation
>        Docket No. 000295-2017

Dear Counsel:

This is the court's opinion on the motions for reconsideration filed by both parties. Defendant, ("Taxation") filed its motion first claiming that the court erred by overlooking controlling law when it voided Taxation's imposed interest and penalties.  Plaintiff then filed his reconsideration motion claiming that the court erred in construing a fact and misconstrued, or erroneously applied, the law.  Each party replied to the other's motion claiming the court did not err as alleged by the respective movant.

For the reasons stated below, the court denies both motions.

*

*(A) Prior Decision*

Prior to these instant motions for reconsideration, plaintiff moved for summary judgment claiming it was legally permissible for him to offset his distributive share of partnership pass-through income for tax year 2010 with a portion of a 2009 passed-through loss from that same partnership pursuant to the federally accepted methods of accounting, which is required to be followed for New Jersey Gross Income Tax ("GIT") purposes under N.J.S.A. 54A:8-3(a). Taxation cross-moved for summary judgment arguing that carry-forward of suspended losses to subsequent years is prohibited by N.J.S.A. 54A:5-2, the controlling statute for GIT purposes.

This court, in a published opinion issued July 6, 2018, denied plaintiff's motion for summary judgment, except as to interest and penalty. The court agreed with Taxation that carry-forward of suspended losses to subsequent years is prohibited by N.J.S.A 54A:5-2, and that the at-risk rules of I.R.C. § 465, were (1) not a method of accounting for purposes of N.J.S.A. 54:8-3(a); and, (2) even if deemed a method of accounting, could not supersede the carry-forward of loss prohibition in N.J.S.A 54A:5-2. The court also found that the principles of equitable recoupment did not apply because the offset of 2010 income by loss incurred by the partnership, and passed-through to plaintiff in 2009, were not a single transaction. The court thus affirmed the GIT assessment of $436,281.

The court however voided the interest ($82,012) and non-amnesty penalty ($21,814) imposed by Taxation.[1] The court held that plaintiff had consistently argued, and the records undisputedly evidenced, that he had overpaid his 2010 GIT such that it was sufficient to cover

---

[1] The final determination accrued interest to 12/15/2016. The total interest charged was $154,644.

Taxation's audited assessment/demand of $436,281, thus, "[i]f no GIT is due, interest or penalty cannot be due since Taxation did not have to wait for the payment of tax." The court observed:

> That plaintiff requested the excess monies withheld for 2010 (i.e. $903,123) to be credited towards his 2011 GIT obligation does not mean that those taxes were not usable towards the 2010 audited assessment. As he points out, he overpaid his GIT liabilities by more than the audited amount in 2011 through 2015 and in each year requested the overpayment be applied to the following tax year. Taxation does not dispute any of these contentions. Other than reciting the statutes permitting interest and penalty imposition for late payments, Taxation offers no cogent reason why plaintiff's payments in 2010, clearly in excess of the tax due, self-reported plus audited, cannot be applied towards the audited tax, or why excess GIT paid in 2010 to be credited towards the 2011 GIT, cannot be used to satisfy the 2010 audited GIT. Therefore, the interest and penalty amounts ($82,012 and $21,814) are voided.

*(B) Reconsideration*

A motion for reconsideration is governed by R. 8:10. This rule provides, in part, that R. 4:49-2 "shall apply to Tax Court matters" and that "all such motions shall be filed and served not later than 20 days after the conclusions of the court are announced orally or in writing . . . ." R. 8:10. Here, both parties' motions are timely.

Pursuant to R. 4:49-2, a motion for reconsideration "shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred . . . ." Grant of such motion is "within the sound discretion of the Court, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990) (citations omitted). Reconsideration is appropriate in a "narrow corridor" of cases, where either "1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or

3

failed to appreciate the significance of probative, competent evidence." Ibid. In other words, it must be demonstrated that the court acted in a manner that is "arbitrary, capricious, or unreasonable," prior to the court engaging in the reconsideration process. Ibid.

Reconsideration is not a proxy for filing an appeal. See Palumbo v. Twp. of Old Bridge, 243 N.J. Super. 142, 147 n.3 (App. Div. 1990). It is not a means to challenge a court's decision merely because a party is dissatisfied with the court's decision. D'Atria, 242 N.J. Super. at 401. "[M]otion practice must come to an end at some point, and if repetitive bites at the apple are allowed, the core will swiftly sour." Ibid.

Despite the above restrictions on the use of a motion for reconsideration, "if a litigant wishes to bring new or additional information to the Court's attention which it could not have provided on the first application, the Court should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." Ibid.

*1. Taxation's Motion for Reconsideration*

Taxation argues that the court erred in voiding the interest and penalty. Specifically, it claims that the court overlooked the law that prohibits Taxation from "applying an overpayment to a deficiency assessment that a taxpayer has elected to apply as a credit for a subsequent period," and that the court "overlooked the fact that the audit resulting in the challenged Notice of Deficiency was not completed until September 2014." It cites to N.J.S.A. 54A:9-7(d) and N.J.A.C. 18:35-3.1, to support its claim that it has no discretion to apply the plaintiff's overpayment, reported in 2010, and directed to be used for 2011, to a subsequently determined deficiency.

4

Plaintiff argues that Taxation never once raised its inability to use plaintiff's GIT overpayment pursuant to the above authority. This is despite his consistent contention that he never underpaid his 2010 GIT, nor was there any deficiency for 2010, even after reducing his self-reported overpayment of $903, 123 with the audited assessment of $436,281.

Plaintiff is correct. In his administrative protest he contended that he "[d]id [n]ot [u]nderpay [h]is 2010 [GIT] Liability." "How is [it] possible," he argued, to assess interest and penalty "as if [he] . . . had underpaid" his GIT liability, when in fact, he "paid more tax than he owed." He noted although Taxation "having years earlier moved" his self-reported 2010 GIT overpayment to his "2011 tax year," that "mistake could be easily corrected by moving $436,281" which was the amount Taxation assessed after audit, "of [his] 2010 tax payments . . . from 2011 back to 2010 (and, of course, reducing [his] credit for 2011 and future years by $436,281." The resultant reduction in the amount available to be credited to a future year would not prejudice Taxation since he had overpaid his GIT by more than the audited assessment in 2011-2013, and in each year had requested the overpayment be applied to the "following year's tax."[2]

In response, the conferee quoted N.J.S.A. 54A:9-5(a), which imposes interest if tax "is not paid on or before the last date prescribed in" the GIT Act, and N.J.S.A. 54A:9-8, which sets the time limit claiming credit or refund. There was no mention of, or reference to either N.J.S.A. 54A:9-7(d) or N.J.A.C. 18:35-3.1, as being a legal impediment.

---

[2] He argued alternatively that the interest start date should have been from 10/14/2011, the date he filed his return. He also contended that penalty should not be imposed, not only because he had never underpaid his 2010 GIT, but also because he reasonably relied on the GIT Act requiring that he follow federal methods of accounting, which he felt included the federal at-risk rules.

5

In plaintiff's complaint to this court, he alleged essentially the same arguments as he had in the protest, namely that Taxation's demand for penalty and interest was "wrong" since he paid more than what was owed even after the audit ($1,525,453 was paid, $1,058,611 was owed after audit); Taxation should have applied the $466,842 ($1,525,453 less $1,058,611), the overpayment as it determined to tax year 2011; and by using the self-reported overpayment amount of $903,123, Taxation was creating "a phantom tax shortfall for 2010," when in fact there was no "2010 tax deficiency." He demanded that the interest and penalty be set aside.

Taxation responded that it was without knowledge or information sufficient to form a belief as to the truth of the allegations, did not have to respond to legal conclusions, and denied any error on its part. It also denied that plaintiff was entitled to the relief sought. It did not cite to N.J.S.A. 54A:9-5(d) or N.J.A.C. 18:35-3.1 in support of this allegation.

Plaintiff's brief in support of his summary judgment motion repeated the above contentions albeit, at length, in Point IV, which was titled in part, "PLAINTIFF DID NOT UNDERPAY HIS 2010 GROSS INCOME TAX LIABILITY." He reiterated that he never underpaid his 2010 GIT; Taxation could have easily moved the audited tax of $436,281 from 2011 back to 2010; while this would reduce his credit for 2011 and future years, it would not prejudice Taxation since he had overpaid his GIT liability by more than $436,281 in each year 2011 to 2015; and the 2011 overpayment reduction would only reduce the tax to be credited towards his 2016 tax liability.

In response, Taxation's cross-motion cited to N.J.S.A. 54:32B-26, a sales and use tax provision, as authority for Taxation to impose penalties and interest on underpaid taxes not remitted in time as provided under N.J.S.A 54:48-1, -4. It also cited to N.J.S.A. 54:49-3, as to the

6

rates that can be imposed. It then argued that it is entirely up to Taxation to abate or waive interest; the Tax Court cannot overturn such a decision unless manifestly wrong; in any event, the court cannot question the quantum to be abated; and that it is the taxpayer's burden to show "a reasonable basis for their mistaken interpretation of the tax statutes." Taxation contended that since plaintiff had no reasonable basis to assert that he could suspend the 2009 loss and carry it forward to 2010, to net it against 2010 income, there was no reason to abate interest or penalty, therefore Taxation "determination not to waive penalty and interest . . . is reasonable and should be sustained."

As is evident from plaintiff's pleadings, and protest, he clearly was not seeking a waiver or abatement of interest and penalties. He was seeking a cancellation of the same on grounds he paid his 2010 GIT on time, he never underpaid his 2010 GIT even after the audit, thus, there never was a GIT deficiency for 2010, a foundational requirement for imposition of interest and penalty, and further, as to penalty, that he had a reasonable basis for his assertions. Therefore, and since Taxation's reply to plaintiff's argument was non-responsive, and never mentioned N.J.S.A. 54A:9-7(d) or N.J.A.C. 18:35-3.1 (even during oral argument) the court found plaintiff's arguments to be persuasive and credible, which it reflected in its prior decision.

Taxation now claims that the court erred in overlooking this statute and regulation, and that the court's focus was "misplaced" when it found persuasive plaintiff's arguments that he never underpaid his 2010 GIT. When Taxation never raised the statute or regulation it now deems is controlling, and a legal bar to the relief plaintiff sought, it is not the court's error. Taxation's contention now is that while it conceded plaintiff did have an overpayment for tax year 2010, it never "concede[d] that Taxation could have applied any portion of the overpayment to satisfy

7

[p]laintiff's subsequently assessed and outstanding 2010 liability." This argument is off the mark. Having never even addressed plaintiff's argument, its silence cannot be considered as an implied or inferred opposition or non-concession, although it could be construed as a waiver.

Equally off the mark is Taxation's argument that the court erred in finding "without legal basis, that Taxation should have offset all interest and penalties properly assessed." But the court never found that Taxation "should have offset" the interest or penalty. Rather, it voided the interest and penalties because it agreed with plaintiff that he did not underpay his 2010 GIT even after the audited assessment. This is why the court held, "[i]f no GIT is due, interest or penalty cannot be due since Taxation did not have to wait for the payment of tax."

A motion for reconsideration is not the method for a party to assert new arguments or legal position. See e.g. Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015) ("Filing a motion for reconsideration does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion.") (citation omitted); Cummings v. Bahr, 295 N.J. Super. 374, 384-85 (App. Div. 1996) (affirming denial of plaintiff's second motion for reconsideration because "[p]laintiff offered a new theory as to liability premised on a new characterization," which was available to plaintiff when it responded to defendant's motion for summary judgment). See also Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2018) (citations omitted); Lahue v. Pio Costa, 263 N.J. Super. 575, 598 (App. Div. 1993) (rejecting defendant's affirmative defense claim, which was raised for the first time after the three-day trial, via a motion for reconsideration). Yet, this is what Taxation is attempting here. It was sufficiently aware of plaintiff's arguments that he never underpaid his 2010 GIT, even after

8

Taxation's audited assessment, therefore interest and penalty should not be imposed. It had ample opportunities to oppose this argument using the now cited statute and regulation. It either chose or failed not to, possibly because it misconstrued plaintiff's argument as one seeking an abatement or waiver during summary judgment, and now misconstrues the court's decision as one requiring Taxation to "offset" the interest and penalty.

Thus, and although the court erred factually by noting in the opinion that the interest of only $82,012 is voided, rather than $154,644,[3] it nevertheless did not err as claimed by Taxation. Having failed to show that this court acted in an "arbitrary, capricious, or unreasonable," manner, the court can deny Taxation's reconsideration motion.

Even if this court were to consider the plain language of the now cited statute, it would not change its opinion. N.J.S.A. 54A:9-7(d) provides:

> The director may prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined to be an overpayment of the income tax for a preceding taxable year. If any overpayment of income tax is so claimed as a credit against estimated tax for the succeeding taxable year, such amount shall be considered as a payment of the income tax for the succeeding taxable year (whether or not claimed as a credit in the declaration of estimated tax for such succeeding taxable year), and no claim for credit or refund of such overpayment shall be allowed for the taxable year for which the overpayment arises.

Taxation's argument, distilled to plain language is this: In October of 2011, plaintiff self-reported an overpayment of $903,123, and asked it be applied to 2011 tax year. Taxation complied

---

[3] See supra n.1. However, the court's Order granting Taxation's cross-motion for summary judgment did not include any dollar amount, but simply voided the "interest and penalties imposed by defendant." Thus, effectively, the court voided all interest imposed, even if its opinion indicated a lower amount of $82,012.

with his request. This rendered his 2010 "account" as having zero dollars. Thus, when it assessed plaintiff $436,281 of GIT in September 2014, the amount in his 2010 "account," was -$436,281. It cannot, in 2014, credit plaintiff's 2010 account with any money already moved to 2011, because N.J.S.A. 54A:9-5(d) forbids it. This means there was a deficiency of $436,281, which means interest and penalty must be imposed.

Plaintiff agrees with Taxation except as to its statutory interpretation, and its conclusions therefrom. He correctly points out that "[f]or any given year, there can only be an overpayment to the extent that the amount paid in by a taxpayer exceeds the taxpayer's tax liability for that year as finally determined." For 2010, it is $466,842 (plaintiff's self-reported overpayment of $903,123 less audited assessment of $436,281). If plaintiff told Taxation that his overpayment is $903,123 for 2010, Taxation would disagree and tell him that it is only $466,842. Taxation would not credit his 2011 "account" with $903,123 because that self-reported amount is, post-audit, not the overpayment, just as it would not comply with a direction to refund, or apply an incorrectly computed self-reported overpayment to a future year. Thus, plaintiff agrees, that under N.J.S.A. 54A:9-7(d), an overpayment of one year that was credited to another year, cannot be re-credited to the overpayment year. What he disagrees is that it is not $903,123 that cannot be re-claimed as a credit for 2010. It is $466,842. It is $466,842 which is the overpayment as determined, it is only this amount which can be credited for a future year or years, and therefore, it is only this amount that cannot be used towards any tax due for 2010, which he is not seeking to do. This has been plaintiff's argument since the time of his protest, and has never wavered thus far. Therefore, the

10

court accepted that he never underpaid his 2010 GIT liability even after the audited assessment, and in the absence of a 2010 GIT deficiency, held that there can be no interest and no penalty.

Taxation is reading the last portion of the second sentence of N.J.S.A. 54A:9-5(d) in a vacuum and in a constrained manner. It ignores the statutory language and intent that only one, and the correct amount, of overpayment can be used as a credit for future years, and it is that amount which cannot be "moved back" to the year in of the overpayment. N.J.S.A. 54A:5-9(d) does not require Taxation to deem only the self-reported amount as the overpayment. Rather it is the amount which is "determined" to be an overpayment, which is permitted to be "claimed" for the following year, and which cannot be re-claimed as a credit for the prior year.

Such a construction of the statute will not, as Taxation fears, open the floodgates for claims for credit ("moving" an overpayment which taxpayers had directed to be applied to a particular future tax year, back to the tax year for which a deficiency is assessed). The facts here, and the intent of N.J.S.A. 54A:9-7(d), militate against such a concern. Plaintiff concedes that if his 2010 overpayment, which he directed be used as a credit for 2011, fell short of the 2010 GIT due after the audited assessment, he would be liable for interest because there would be a 2010 GIT deficiency. Creating a deficiency by ignoring the correct amount of the overpayment for 2010 ($466,842), is the "phantom" deficiency that plaintiff contends is erroneous, and contrary to the now cited N.J.S.A. 54A:9-5(d).[4]

---

[4] Taxation's contention that plaintiff makes a new argument of a "phantom" overpayment, lacks merit. Plaintiff's complaint and briefs in support of his summary judgment motion reference this term more than once in the context of his arguments that the imposition of interest and penalty is improper.

The court agrees with plaintiff that after Taxation audited his 2010 GIT return and imposed additional GIT, there was no deficiency remaining. Therefore, the court need not alter its conclusion that no interest or penalty can be imposed upon plaintiff when he has no GIT deficiency.

Taxation cites to a portion N.J.A.C. 18:35-3.1, as a law that this court overlooked, to claim that credit is applied "where the taxpayer indicates on the face of such return that he or she elects to have such overpayment so applied," and if so, "will be considered to be a payment of the first installment of the estimated tax for the next succeeding year unless the taxpayer designates otherwise on the face of the return for the year in which the overpayment was made." It argues that never, at any point, did plaintiff "contend that he requested Taxation to disregard his credit election and apply any reported overpayments to satisfy his 2010 GIT deficiency assessment."

This argument fails because regardless of a taxpayer's request to credit a certain amount to a future year, under N.J.S.A. 54A:9-5(d), Taxation can credit only the amount that is the overpayment for that particular tax year. That Taxation determined the overpayment amount in 2014, as opposed to 2011 when plaintiff filed his return, does not alter that statutory provision, nor render plaintiff in control, especially when the regulation does not address how it will apply if the overpayment amount is changed by Taxation due to an audit, as is the case here. Additionally, as explained above, plaintiff has consistently requested that the correct amount of overpayment be used for 2011, and the 2010 "phantom" deficiency be removed. Until this reconsideration motion, Taxation chose to ignore that request, or misconstrue that request as one for a waiver/abatement.

12

Taxation's last argument that plaintiff made a business decision to apply his self-reported 2010 overpayment to 2011, cannot now backtrack and claim it as a payment for 2010, is meritless under N.J.S.A. 54A:9-5(d). Equally meritless is its reliance on Kaplan v. Dir., Div. of Taxation, 23 N.J. Tax 594, aff'd, 24 N.J. Tax 415 (App. Div. 2009). That case has absolutely no bearing here, being entirely dissimilar in facts and the applicable law. For all of the above reasons, Taxation's motion for reconsideration is denied.

*II. Plaintiff's Motion for Reconsideration*

Plaintiff articulates several reasons why the court erred: (1) the "court erroneously states that plaintiff 'does not dispute' that his share of SSY's 2009 loss was distributed to him in 2009," and erroneously concludes that the loss was carried forward to 2010; (2) the court misconstrues Estate of Guzzardi v. Dir., Div. of Taxation, 15 N.J. Tax 395 (Tax 1995) and improperly analogizes capital losses, discussed in that case, to the at risk rules of I.R.C. § 465; (3) the court improperly used Estate of Guzzardi in discussing federal accounting methods, when the case has nothing to do with federal accounting methods; (4) the court erroneously draws a distinction between accounting provisions and substantive provisions; (5) the court erred in saying that the "'thrust of I.R.C. § 465 is not a timing of a loss recognition;'" (6) the court erred in claiming that plaintiff's situation is no different than a situation where a partner in partnership has a loss in excess of his or her basis; (7) the court's conclusion that N.J.S.A. 54A:5-2 protects against tax shelters is mistaken. During oral argument, plaintiff articulated that the court's primary error was limiting the GIT's tax-shelter avoidance intent to N.J.S.A. 54A:5-2, when clearly, that intent permeated the entire GIT Act. This per plaintiff, results in the GIT actually allowing tax shelters such as the ones

13

intended to be avoided by I.R.C. § 465, the federal at-risk rules; (8) the court misunderstood that only a single transaction occurred when addressing the equitable recoupment argument; and, (9) the court failed to address plaintiff's square corners doctrine argument.

The court finds that almost all of these reasons essentially state why the court got it wrong. But dissatisfaction with the court's decision is not grounds for revisiting the same by granting a motion for reconsideration. Palumbo, 243 N.J. Super. at 147 n.3 ( "We . . . disapprove of the excessive use of motions for reconsideration . . . [which are being] made with increasing frequency when essentially there is little more than disagreement with the court's decision. Motions for reconsideration were never meant to be a substitute for the filing of a timely appeal.").

Three points however, warrant mention. The first is plaintiff's contention that the court "erroneously" stated that plaintiff did not "dispute" that his share of the partnership's loss in 2009 was distributed to him in 2009. Plaintiff does not point to any document or evidence that proves otherwise. The K-1 issued to plaintiff showed his distributive share of loss. Plaintiff argued that the at-risk rules function on the individual level, not at the entity level. Indeed, in 2010, the K-1 showed his distributive share, yet there was a hand-written note that "[t]here is an additional loss . . . taken on this 2010 return. It was suspended in 2009 by the 'at risk' rules, but allowed now." To thus claim that this was somehow a factual error, in that plaintiff was never distributed his share of the partnership loss, is misleading. The loss was distributed. Whether or not he could use that loss to offset income differed federally due to the at-risk rules, and in New Jersey due to N.J.S.A. 54A:5-2. Thus, plaintiff's assignment of a factual error on the court's part is unpersuasive. While

14

plaintiff continues to argue that it is not a carry-forward of a prior year's loss, this is more appropriately made to the Appellate Division.

The second point is the court's "palpably" erroneous conclusion that our Legislature's intent to avoid tax-shelters is adequately expressed in N.J.S.A. 54A:5-2. Per plaintiff, the anti-tax shelter motivation permeates the entire GIT Act, thus, the court's ruling artificially limits the same, which in turn leads to an absurd result of allowing some anti-tax shelters (such as the present case), and prohibiting others. Although well-articulated, the argument is not new. Plaintiff argued similarly in his summary judgment motions. The court considered these arguments, and made its finding. The court however, does now note that under plaintiff's argument of the anti-tax shelter motivation being the foundational foothold of the GIT Act, there is no need for resort to N.J.S.A. 54A:5-2 or even to 54A:8-3, the statute plaintiff is relying upon. All one needs to show is that the taxpayer's treatment of a particular item of income or loss is anti-tax shelter, and the court must treat such item accordingly. It is doubtful that the Legislature intended so broad an incorporation of the federal anti-tax shelter regime when it enacted the GIT Act or N.J.S.A. 54A:5-2. The court therefore finds no reason for it to re-visit its prior conclusion. Plaintiff's remedy is with the higher court, which may very well agree with him.

The last point plaintiff raises is that the court failed to address his "square corners doctrine."[5] He is correct in that the court's opinion does not use this phrase. Taxation correctly

---

[5] The square corners doctrine as set forth by our Supreme Court is that the "government will act scrupulously, correctly, efficiently, and honestly." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 427 (1985). The assumption is that a governmental authority "will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without

points out that this aspect of the court's finding was in the portion addressing the inapplicability of the equitable recoupment principle. Plaintiff correctly points out that equitable recoupment principle is not the square corners doctrine.

However, the latter is a distinction without significant difference. Plaintiff's brief in support of his summary judgment motion argued that Taxation failed to turn square corners because it consistently advised all taxpayers to follow the federal methods of accounting, and never promulgated regulations or other guidance on its interpretation of the at-risk rules. Had Taxation publicly stated its position on the at-risk rules, argued plaintiff, he would have filed his GIT returns differently. The court agreed with plaintiff that Taxation never published any articles on how the at-risk rules apply in New Jersey, however, it also explained that there was ample guidance that use of a prior's year loss in a subsequent tax year is impermissible, thus, plaintiff could not credibly claim lack of guidance as a reason to annul the assessment. Thus, it is evident that plaintiff's arguments focused on a lack of guidance as to the applicability of the federal at-risk rules, and it is equally evident that the same were addressed by the court. Therefore, even if the court were to label its findings recited above as addressing plaintiff's square corners doctrine, it would not change those findings.

Verily, the court did not specifically distinguish the cases plaintiff cited, such as Residuary Trust A v. Dir., Div. of Taxation, 28 N.J. Tax 541 (App. Div. 2015); Milligan v. Dir., Div. of Taxation, 29 N.J. Tax 381 (Tax 2016); or Harrington v. Dir., Div. of Taxation, 29 N.J. Tax 370

_____

ulterior motives." Ibid. Thus, a taxing authority "may not conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage over" a taxpayer. Ibid.

16

(Tax 2016). However, the court is not bound to address each and every case cited by a party. Even if the court were to examine these cases, in the context of plaintiff's present argument that a change in Taxation's position requires a voiding of the entire assessment, the court would not reconsider its findings. In those cases, there was an explicit pronouncement by Taxation or another State agency, that an item was not taxable, and then during an audit, the item was deemed taxable, or that to be exempt, an additional requirement was imposed. Those cases involved an attempt to retroactively change a prior position taken by the government. There is nothing similar here. Plaintiff was never advised that the federal at-risk rules would permit use of a loss passed through to him in tax year 2009, in tax year 2010. Plaintiff's inference that the same is permissible because Taxation espoused following the federal methods of accounting for GIT return filing purposes, is a far cry from an explicit pronouncement that a transaction is not taxable. Those cited cases are inapplicable by analogy or extension.

A motion for reconsideration is improper when it is used "to ask the Court to rethink what is had already thought through -- rightly or wrongly." <u>Oritani Sav. & Loan Assoc. v. Fidelity & Deposit Co.</u>, 744 F. Supp. 1311, 1314 (D. N.J. 1990) (citations and internal quotation marksomitted), <u>rev'd & remanded on other grounds</u>, 989 F.2d 635 (3d Cir. 1993). While plaintiff may consider the court's decision as "so aberrational as to border on the Kafkaesque," re-emphasizing his prior arguments do not merit reconsideration. For all of the foregoing reasons, this court denies plaintiff's reconsideration motion.

Very Truly Yours,

Mala Sundar, J.T.C.

17